## St. Louis National Stock Yards v. August Godfrey.

1. INSTRUCTIONS—*To Find for the Defendant.*—Where there is an instruction to find for the defendant the rule is, where there is evidence tending to prove all that is required to warrant a recovery, the court should submit the case to the jury, without regard to what the presiding judge may, at the time, think the court would hold as to the weight of the evidence in case of a motion for a new trial.

2. NEW TRIAL—*When Granted on Ground that Verdict is Contrary to Evidence.*—Although there may be evidence tending to prove all that is required to warrant a recovery, still, where the verdict is so manifestly against the weight of evidence as to make it apparent to the court that the verdict was not the result of the impartial and honest judgment of the jury, but that it must have resulted from mistake, partiality, prejudice, or some improper motive or condition, it is the duty of the court to set aside the verdict and award a new trial.

3. SAME—*When Not to be Granted on Ground that the Verdict is Contrary to Evidence.*—The verdict will not be set aside and a new trial granted when there is contrariety of evidence, and the facts and circumstances, by a fair and reasonable intendment, will authorize a verdict, notwithstanding it may appear to be against the strength and weight of the testimony.

4. NEGLIGENCE—*Liability of a Party for Concurring Negligence of Himself and Third Party.*—One is liable for an injury caused by the concurring negligence of himself and a third party, to the same extent as for one caused entirely by his own negligence.

5. INSTRUCTIONS—*When Sufficiently Comprehensive as to Time of Injury.*—In a suit for a personal injury the phrase " while in the exercise of ordinary care and caution for his own safety," as used in an instruction, is sufficiently comprehensive as to time, the word " while "

meaning during that time, and necessarily implies some degree of continuance, and refers to the whole series of circumstances involved in the transaction.

**Action on the Case.**—Personal injury. Appeal from the City Court of East St. Louis; the Hon. SILAS COOK, Judge, presiding. Heard in this court at the August term, 1901. Affirmed. Opinion filed March 3, 1902.

MESSICK, MOYERS & CROW, attorneys for appellant.

M. MILLARD and F. C. SMITH, attorneys for appellee.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was an action in case, in the City Court of East St. Louis, by appellee against appellant, to recover for a personal injury. Trial by jury. Verdict for appellee in the sum of $5,500. Remittitur of $1,500. Judgment on the verdict for $4,000.

The declaration is, in substance, that appellee was in the employ of the Baltimore & Ohio South-Western Railroad Company as a locomotive engineer, and required in the discharge of his duties to operate and run a certain switching engine of said company, in hauling freight cars into and out of the yards of the defendant at said city, and defendant was conducting the business of a stock yard company, and had in its use for that purpose divers switching engines, cars, trains, railway tracks and other appliances necessary in prosecuting said business, whereby it became the duty of defendant to conduct and carry on its said business in a reasonably prudent manner, in order to avoid injuring the plaintiff while he was performing said services; but the defendant, not regarding such duty, so carelessly and improperly managed and controlled one of its engines, whose headlight was not burning, with cars attached thereto, that said engine was negligently driven against and made to collide with the engine plaintiff was running and operating, with such force and violence that the plaintiff was thereby thrown to the ground without any fault or negligence on his part, and was seriously and permanently injured, and suffered great pain, and has been compelled to

incur a large expense for nursing, doctors and medicines, in endeavoring to be healed and cured.

Appellant controlled and operated the St. Louis National Stock Yards, and in conducting its business, maintained and used many railroad tracks leading to and from various points in its yard. These tracks crossed each other in a number of places, and none of them were equipped with inter-locking devices, and no flagman was at the crossing where this injury occurred, on that occasion. One of the tracks was known as the Whittaker track, one as the hog-house track and another as the Nelson Morris track. There were various buildings in this yard, one of which was known as the Nelson Morris building, near the end of which were two stub tracks on which stood box cars. The Nelson Morris track crossed the hog-house track. In conducting its business appellant kept three or more switching crews of its own at work, moving engines and cars over the tracks and crossings in its yards, and all the railroads terminating in East St. Louis, that transacted business with appellant or its customers, were required to enter the yards and depart from them, with their engines and cars, over these tracks and crossings of appellant. On the occasion of the injury to appellee, one of appellant's switching crews in charge of an engine and train, was on the Nelson Morris track, headed toward the crossing, and appellee, an employe of the Baltimore and Ohio South-Western Railroad Company, an engineer in charge of an engine, with his crew, was on the hog-house track, also headed toward the crossing, coming into the yards in pursuance of the business of his company with appellant and its customers. The Nelson Morris building and the box cars on the stub track stood between the two engines as they approached the crossing, cutting off the view. One at the crossing could in ordinary daylight or when the usual headlights on the engines were burning, see an approaching engine for a considerable distance on either track. The engines collided; appellant's engine came with sufficient force to knock or push the engine appellee was operating off the track, whereby appellee was thrown out

of the cab and badly injured. The collision occurred about 5:30 o'clock on the evening of December 30, 1898. It was dusk, but not yet dark; not daylight nor very dark. Appellee had passed over one crossing in the yard before he reached the one where the collision occurred.

In addition to the foregoing, the testimony tends to prove that appellee had the headlight on his engine burning, and that as he approached the first crossing he set his brake and came to a stop; whistled twice, two short blasts, moved ahead, and when within fifty or sixty feet of the crossing where the collision occurred, he stopped and sounded the whistle again, as before, and looked ahead on both sides and saw that everything was clear, as far as he could see; that one of his crew was riding on the foot-board in front of the engine, piloting him into the yard; that at this stop the pilot got off the foot-board and went forward to the crossing and signaled for him to come ahead; that he then whistled twice more and the bell was rung, and he started forward and reached the crossing at a speed of about two miles per hour. The testimony further tends to prove that appellant's engine had fourteen loaded cars attached; that it was running down grade without any headlight burning; that those in charge of it did not answer appellee's signals, nor sound a whistle or ring a bell, nor send forward a flagman or pilot as it approached the crossing; that blowing of the whistles and ringing of the bells were the only signals in use in the yards to give warning of an approaching engine.

At the conclusion of appellee's testimony in chief, appellant's counsel moved the court to exclude all the evidence and for an instruction directing the jury to find appellant not guilty. The court denied the motion. Again, at the conclusion of all the evidence, appellant's counsel renewed its motion, and the court again denied it. The rulings of the court in denying these motions are assigned as error, and the principal part of counsel's brief and argument is devoted to this point in the record. Their contention is that appellee was guilty of negligence on his part which

contributed to his injury; that his conduct, as shown by the evidence, was negligence *per se*—negligence established in law—and that the court should have so held and instructed the jury accordingly. They contend that he violated the statute, Sec. 81, Chap. 114, Starr & Curtis:

"All trains running on any railroad in this State, when approaching a crossing with another railroad upon the same level, * * * shall be brought to a full stop before reaching the same, and within eight hundred feet therefrom, and the engineer or other person in charge of the engine attached to the train shall positively ascertain that the way is clear, and that the train can safely resume its course before proceeding to pass the * * * crossing."

We are of opinion this statute has no application to the interlappings and crossings of a labyrinth of a company's own tracks in its own switch yards, such as the one in question. But if we assume this statute does apply, we can not hold that the evidence conclusively shows that appellee failed to comply with its requirements. It is not suggested that the statute requires that he should have done any particular act that he did not do, but counsel insist that the statute requires that he should "positively ascertain" that his engine could "safely resume its course" before proceeding. The position is: he did not, in fact, succeed in getting safely over the crossing, therefore he did not positively ascertain that it was safe to resume his course before proceeding, *i. e.*, was guilty of violating the statute. This position is unsound, for when he proceeded, after the stop, the way was clear, and he could safely resume his course. The fact alone, that after he resumed his course, and as he progressed, the way became obstructed by the unexpected and unannounced approach of appellant's train, does not conclusively establish appellee's guilt.

It is also contended that by coming into the yard on the hog-house track, appellee violated one of the rules of the yards and that in this he was guilty of negligence *per se*. At one time, a number of years before the injury, a rule was promulgated requiring incoming engines to take the Whittaker track, but it does not conclusively appear that

this rule was ever actually in force, and there is evidence tending to prove that appellee had no knowledge of such rule; that it had, with the knowledge and acquiescence of appellant, been habitually disregarded in the conduct of the business, and that the general custom and practice was for an incoming train to take whichever track was not occupied at the time, and that when appellee went in on the occasion of the injury, the Whittaker track was occupied by a train from the Louisville and Nashville R. R., and that the hoghouse track was unoccupied. Under this state of facts a court can not say that the act of coming into the yards on the hog-house track was negligence *per se*—that proof of the act, in law, established negligence.

It is further argued that, independent of the above mentioned statute and rules, the conduct of appellee establishes, in law, want of due care, and contributory negligence on his part. In that feature of this case, due care and contributory negligence were questions of fact to be determined by the jury, and not questions of law to be determined by the court.

As to the class of conduct disclosed by the evidence in this case, it is only where, after conceding as true all that the evidence tends to prove in favor of the party charged with want of due care or with negligence, it is apparent to the court that all reasonable minds will agree in the conclusion that the conduct thus shown does, in fact, establish want of due care or negligence, that the court may assume the absence of due care or existence of negligence, and direct a verdict accordingly, and this is not such case.

The duty of appellee in this case was, to exercise that degree of care and caution for his own safety, that a reasonable person of ordinary prudence would have exercised under the same or similar circumstances, and whether or not his conduct fills that measure was for the jury to determine from the evidence.

We do not understand appellant's counsel to contend that there is no evidence in this record tending to support appellee's case, but they contend that even where there is "some

evidence tending to support the plaintiff's case," the court may exclude it and direct a verdict for the defendant, and in support of this contention cite a number of cases, the leading one being Simmons v. Chicago and Tomah R. R. Co., 110 Ill. 340. This is not now the law in this State. In Davis v. Hoxey, 1 Scam. 406, the rule was laid down that where the evidence tends to prove the issues, the court has no power to take the case from the jury, nor to direct them to find for defendant, and from that time forward for forty years it was uniformly, over and over, again and again, held that where there is evidence tending to prove all the issues necessary to a recovery, the court has no power to direct a verdict. It is true that in the Simmons case, in 110th, and a few other cases cited by counsel, the court departs from this rule. In the Simmons case there was a divided court. One of the dissenting justices said:

"I regard the opinion as in direct conflict with many previous decisions of this court, and virtually deprives parties of trial by jury, and substitutes the court for a jury."

The other one said:

"I think it is a question of law whether there is any evidence tending to prove a given allegation, and that it is a question of fact whether a given amount of evidence is reasonably sufficient to sustain such allegation. The former is a question for the court, the latter is a question for the jury, subject to revision by the court on a motion for a new trial. I therefore can not concur in the proposition that though there may be some evidence tending to prove every essential allegation of a plaintiff, the court may properly take the case from the jury and direct a finding for the defendant, merely because, in the judgment of the court, the evidence in support of some material allegation is not reasonably sufficient in force to sustain a verdict for plaintiff."

During the few years that rule may be said to have prevailed, the court was not in harmony as to it, and it was not uniformly applied. The court has, however, long since entirely receded from that rule, and in more than thirty cases since the Simmons case, has laid down the rule substantially as it existed prior to the departure. Three or

St. Louis National Stock Yards v. Godfrey.

four of those cases will represent them all.   In Louisville, New Albany and Chicago Ry. Co. v. Patchen, 167 Ill. 204, the court says:

" It is also claimed that the court erred in refusing to instruct the jury to find for defendant.   If there had been no evidence whatever tending to prove the plaintiff's cause of action, the instruction might have been given; but where there is evidence tending to prove the cause of action * * * it is the duty of the court to refuse an instruction of that character and leave the jury to pass upon the weight of the evidence."

In Wilbor v. Ewen, 183 Ill. 626, the court say :

" If the evidence introduced on the trial in the Circuit Court, with all proper inferences to be drawn therefrom, fairly tends to prove plaintiff's cause of action, the Circuit Court did not err in refusing to give the instruction to find for defendant."

In Landgraf v. Kuh, 188 Ill. 484, it is said:

" It is well settled in this State, that an instruction to the jury to find a verdict for the defendant, should be refused where there is evidence tending to show the plaintiff's right to recover."

In Central Ry. Co. v. Knowles, 191 Ill. 241, the same rule is held, and the court remarks :

" It has come to be quite common with counsel for the defense in personal injury cases to ask for an instruction directing the jury to find for the defendant.   * * *   An instruction to find for the defendant should never be asked by counsel where it is clear that there is evidence in the record tending to establish the cause of action."

The rule now is, that where there is evidence tending to prove all that is required to warrant a recovery, the court should submit the case to the jury, without regard to what the presiding judge may, at the time, think the court would hold as to the weight of the evidence, in case of a motion for a new trial.

Counsel further contend, with reference to the weight of the evidence, that it greatly preponderates in favor of appellant, and for that reason the court ought, at least, to have granted their motion to set aside the verdict.   It is

true that although there may be evidence tending to prove
all that is required to warrant a recovery, still, where the
verdict is so manifestly against the weight of the evidence
as to make it apparent to the court that the verdict was not
the result of the impartial and honest judgment of the jury,
but that it must have resulted from mistake, or from par-
tiality, prejudice, passion, or some improper motive or con-
dition, it is the duty of the court to set aside the verdict
and award a new trial. Where this state of case does not
appear, the rule is as laid down in Shevalier et al. v. Seager
et al., 121 Ill. 564. In that case the learned judge who
prepared the opinion of the court discussed the subject at
considerable length, and among other things said :

" The question then recurs, what is the rule in common
law cases in respect to granting new trials on the ground
that the verdict is contrary to the evidence ? The question
stated has been frequently answered by this court, under
various circumstances, and in language, though often dif-
fering in form of expression, yet always practically amount-
ing to the same thing. This is fully shown by the follow-
ing cases : * * * Johnson v. Moulton, 1 Scam. 532;
Roney v. Monaghan, 3 Gilm. 85: O'Reiley v. Fitzgerald,
40 Ill. 310; Chicago and Great Eastern Ry. Co. v. Vos-
burgh, 45 Ill. 311; DeClerg v. Mungun, 46 Ill. 112; Young
v. Rock, 48 Ill. 42; St. Louis, Jacksonville and Chicago Ry.
Co. v. Terhune, 50 Ill. 151; I. C. R. R. Co. v. Gillis, 68 Ill.
317. The case last mentioned contains, perhaps, as clear
and apt a statement of the rule, if not more so, than any of
the others. It is there said : ' If any rule of court can be
so well established as to be neither questioned nor require
the citation of authorities to support it, it is, that the ver-
dict will not be set aside whenever there is contrariety of
evidence, and the facts and circumstances, by a fair and
reasonable intendment, will authorize a verdict, notwith-
standing it may appear to be against the strength and
weight of the testimony.' In the later case of Calvert v.
Carpenter, 96 Ill. 63, it was said : ' This court will not
reverse the judgment of the trial court where the evidence
of the successful party, when considered by itself, is clearly
sufficient to sustain the verdict.' The truth is, the rule
could not be otherwise without invading the province of
the jury to determine the credibility of witnesses, and to say
which of them are to be believed in case of a conflict. To

St. Louis National Stock Yards v. Godfrey.

do this would be to dispense with the essential functions of a jury, and thus to destroy its utility altogether."

We have discussed these two features of this case at great length, and made copious quotations, and our excuse for it all is, that we deem it wise to occasionally refresh our recollection, and re-ground ourselves in the fundamental principles upon which our system of trial by jury is based.

It is insisted that the member of appellee's crew who was piloting the train, and whom the testimony tends to show went forward to the crossing after appellee had stopped his engine, and signaled appellee to come ahead, was guilty of negligence in not seeing appellant's approaching train, or that if he did see it he was guilty of negligence in signaling appellee to come ahead, and that this negligence is, in law, imputable to appellee, and bars his right to recover. The trial court appears to have taken the same view of the law upon this question as is contended for by counsel here, and at the instance of counsel for appellant, presented the direct issue to the jury in instruction No. 11 of the series given at their request, in which the court told the jury, in substance, that if they found that this co-employe was guilty of negligence, they should find a verdict for the defendant. No complaint is anywhere made of any ruling of the court as to this feature of the case. If counsel's contention as to the law was correct, that question is settled against them by the verdict of the jury on the issue of fact admitted.

When applied to the state of pleadings and evidence such as is disclosed in this record, the principle contended for is not the law. Counsel rely solely upon the case of C. & N. W. Ry. Co. et al. v. Snyder, 117 Ill. 376, and no authority as to that feature of the case is referred to or cited in the opinion in that case. That case is not analogous. There the train on one railroad was approaching the crossing of another railroad, and the statute above discussed clearly applied. In that case it was averred in both counts of the declaration, that the plaintiff and those engaged with him in the management of the train were in the exercise of due care. This averment admitted that the plaintiff

and his co-employes on his train were in fact and in law fellow-servants, and undertook the burden of proving that they were all free from negligence, especially with reference to the observance of the requirements of the statute. And further, the person whose negligence is charged to have caused the injury, was in the joint employment of the defendant and plaintiff's master, so that all concerned had a common master, and it was an open question to be determined by the jury from the evidence, whether the plaintiff and the person charged to have been guilty of the negligent act, were not fellow-servants. None of these things existed in this case. The law of fellow-servants has no place in this case, nor can we perceive any relation from the evidence that warrants the holding that the negligence of appellee's co-employe is imputable to appellee. As applicable to the facts of this case, appellee's co-employe, who went forward to the crossing in advance of the engine, was as much a third party as if he had been in the service of another company.

The general rule is, that one is liable for an injury caused by the concurring negligence of himself and a third party, to the same extent as for one caused entirely by his own negligence, and this case falls under the general rule. Of course, if the negligence of the co-employe, or of any third party, was the sole cause of the injury, appellant could not have contributed to it, and therefore could not be liable; but appellant's counsel guarded that point, and submitted that direct issue to the jury in their third instruction, and are bound by the verdict. As to this feature of this case, the decisions of our Supreme Court in C. & E. I. R. R. Co. v. O'Connor, 119 Ill. 586, and in Pullman Palace Car Co. v. Laack, 143 Ill. 242, are directly in point, and are conclusive. A fuller discussion of the question can be found in C., R. I. & P. Ry. Co. v. Sutton, 63 Federal Reporter, 394.

Complaint is made of the rulings of the trial court in the admission of certain testimony, and in the overruling of appellant's motion to exclude such testimony after it had been admitted. The evidence complained of was all

with reference to the location of certain buildings, tracks and cars, and with reference to the usual manner of conducting the business of appellant and others in appellant's yards. All this evidence was competent and proper to be admitted in this case. In cases of this character the entire environment, including the usual manner of conducting the business involved at the place of the injury, is almost always competent. The environment furnishes light in which to interpret acts and conduct.

Complaint is also made of the action of the trial court in giving the first, second, fifth and seventh instructions given on request of appellee. As to the first instruction it is not contended that it does not correctly state the law, but that it was improper to give it in this case. The evidence tends to prove that on the 22d day of December, 1893, appellant had promulgated a rule designating certain tracks to be used in coming into its yards, and certain others in going out, and on the trial offered this rule in evidence. The evidence also tended to prove that appellee had been in the same service as at the time of the injury, for four years, and had never seen or heard of such rule, that no effort had been made to enforce it, and that it was habitually disregarded with the knowledge and acquiescence of appellant. The instruction told the jury in the usual form of such instruction, that if they believed from the evidence that this rule was habitually violated with the knowledge and acquiescence of appellant, or was not enforced as to the switching crew with which appellee worked, that then the jury should disregard such rule in considering the case. Counsel say the relation of master and servant did not exist between appellant and appellee, and appellant was under no duty to make and enforce rules for appellee's protection. True, but this rule was introduced by appellant, and it was appellant that sought to avail of it on the trial, as a valid rule then in force, and binding upon appellee. This instruction was properly given in this case.

When applied to the issues and evidence in this case, the second, fifth and seventh instructions state the law with

substantial accuracy, and there is no expression in either of them that could lead a jury astray. The second and seventh contain the phrase, " while he was in the exercise of ordinary care for his own safety." It is insisted that this assumes that appellee was in the exercise of such care. No authority is cited in support of this contention. It does not so appear to us. This phrase has long been in general use in this State in this character of instructions, and has many times been before the Appellate Courts and the Supreme Court, and so far as we are advised, has never been condemned, in fact, never before was challenged in that respect, although challenged and discussed in other respects. To our minds it does not appear possible that a jury, under the circumstances of this case, could have been misled by it.

It is also insisted as to the phrase, " while he was in the exercise of ordinary care and caution for his own safety," used in these instructions, that it is not sufficiently comprehensive as to the time; that it only includes the instant of time in which the injury was received; and in support of this contention cite I. C. R. R. Co. v. Weldon, 52 Ill. 290, and C., M. & St. P. Ry. Co. v. Halsey, 133 Ill. 248. In the case cited in 52 Ill., the language of the instruction is not given. In the case in 133d, the language is, " at the time of the accident." It is only in a case where there is something to indicate that the jury were misled by the form of the statement, i. e., something in the facts of the particular case to warrant the conclusion that the jury understood the expression used to comprehend only the immediate " time of receiving the injury," that either of the above quoted forms of expressing the time can be held to be not sufficiently comprehensive. It is not ordinarily so. Has not, so far as we are advised, been so held in any of the later cases in either the Appellate or Supreme Court; but the contrary has been uniformly held in recent years and in all the recent cases; among such are C. & A. R. R. Co. v. Fisher, 141 Ill. 614. There the phrase was identical with the one before us, and the same argument was put up against it. The court said:

"The word 'while' means 'during the time that' and seems to necessarily imply some degree of continuance. The jury could not reasonably have regarded it otherwise than as referring to the whole series of circumstances involved in the transaction."

And to the same effect are L. S. & M. S. Ry. Co. v. Johnsen, 135 Ill. 641; McNulta v. Lockridge, 137 Ill. 270; L. S. & M. S. Ry. Co. v. Ouska, 151 Ill. 232; C., C., C. & St. L. Ry. Co. v. Keenan, 190 Ill. 217. The language in these cases is, "at the time of the injury," same as in the case in 133d Ill., relied on by counsel to support their challenge. The court in these respective cases says:

"The words 'at the time' as used in the instruction, refer to the whole transaction or series of circumstances. The jury could not reasonably have understood the instruction (the words 'at the time') otherwise than as referring to the occasion, * * * to the whole transaction. The words 'at the time of the injury' * * * have reference to the whole transaction and all that occurred. * * * The phrase 'at the time' * * * as used in these instructions, refers to the conduct of plaintiff's intestate while approaching the railroad as well as while attempting to cross the same."

What counsel say as to the fifth instruction, and as to the features of the seventh not herein discussed, is, we think, hypercriticism.

Finally it is contended and urged upon us as a reason for reversing this case, that the evidence proves that when appellant's engine and train struck the engine on which appellee was, and knocked or pushed it off the track and separated it from the tank, that the fireman in his haste to get out bumped up against appellee, and appellee fell down through the opening, and that the fireman jumped or fell on him; that the fireman in his haste to get off helped knock appellee off the engine, and then injured him by jumping or falling on him, and therefore the injury to appellee was not caused by appellant; that even if appellant is liable, "nominal damages only could be legitimately recovered." We can not agree with counsel in this view of the law applicable to such state of facts. But it is

unnecessary to discuss the law of the situation. The trial court seems to have agreed with counsel in this view, and in their eighth instruction, they directly submitted the question to the jury as to the facts contended for by them, with a direction from the court that if they so found the facts, " their verdict should be for only a nominal sum as damages," and the verdict resolves that issue of fact against appellant.

We find no error in this record warranting a reversal of the case. The judgment of the City Court of East St. Louis is affirmed.