## Illinois Southern Railway Company v. S. P. Laswell.

1. VERDICT—*when set aside as against the evidence.* A verdict which is clearly and palpably against the evidence will be set aside on appeal.

Action on the case for personal injuries. Appeal from the Circuit Court of Marion County; the Hon. SAMUEL M. DWIGHT, Judge, presiding. Heard in this court at the August term, 1905. Reversed and remanded. Opinion filed March 22, 1906.

R. J. GODDARD and L. M. KAGY, for appellant; E. C. RITSHER, of counsel.

LOGAN B. SKIPPER, ALBERT D. RODENBERG and CHARLES H. HOLT, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

On March 15, 1904, appellee was working on the section with a gang of men engaged in putting in concrete abutments for appellant, at a bridge across a creek in Randolph county. He and a number of others of the workmen lived at Evansville, Illinois, five or six miles northeast of the place where they were at work, and went to and from their work over appellant's road on hand-cars furnished by it. After they had finished their work on the day in question, they started home, the men being distributed on three hand-cars. When they had gone between one and two miles on the way home, and were running at a rate of from nine to twelve miles an hour, the middle car, being the one on which appellee was riding, just as it reached a curve, left the track and rolled down the embankment. When the

car left the track, appellee was struck in the side, knocked off the car onto the track, and claims to have suffered severe injuries. His companions placed him on another car, where there was more room, upon which he rode to Evansville. They also put the car upon which he and they had been riding back on the track, and rode on it to the same place. Appellee afterwards brought suit against appellant to recover damages.

There was a trial by jury, appellee obtained a verdict and judgment for $1,200, and the railway company brings the case to this court by appeal.

The only question which requires our attention, or which is raised by the arguments in the case, is one of fact. The claim of appellee, as set out in his declaration, is, that the hand-car on which he was riding at the time of the injury, was out of repair and in an unsafe condition. Only two witnesses were sworn and testified on behalf of appellee. Appellee himself testified that he did not know the condition of the car prior to the time he was injured. Reuben Maffit, who was not on the car with appellee at the time of the injury, but was riding on the car following it, testified that he had formerly used the car on which plaintiff was riding, but had not been on it for some little time; that some mornings, when he rode on it, it would be tightened up, and other mornings it would be loose with lots of play in the spindles; that certain bolts holding the boxes over the shaft the wheels were fastened onto, would not hold, and had to be tightened every morning in order to keep the car in good condition to run; that the effect on the car, when the bolts were loose, was to cause it to "slue" first one way and then the other going around a curve; that he did not know the condition of the car on the morning of the day of the injury, but that after it had jumped over the rails "of course, the car was loose and needed tightening up again;" that he helped pull the car around and put it on the track again. Neither appellee nor Maffit attempted to explain why the car left the track on the day in question. Seven witnesses were

sworn on behalf of appellant, five of whom were fellow-workmen of appellee and on the car with him at the time he was injured. Meadows, the foreman of the work-gang, and Clark, the road master, testified that the car was what was known as a Sheffield car, which was a standard car in general use by railroads. The foreman also testified that some four or five days prior to the accident the car was reported in bad condition, and that he had it repaired and new truss rods placed under it; that it was in good condition and repair in the morning before the accident. Meadows was corroborated as to the repairs made on the car by the other five witnesses, two of whom made the repairs, and those who testified upon the subject said that the car was in good condition and repair on the morning in question. Braun, one of these witnesses, testified that after the wreck they put the car on the track and ran it to Evansville, four and one-half miles, and the next morning ran it back again to work without making any repairs; there was nothing wrong with the car then, only that the key was a little loose in the axle, and that it had nothing to do with the running or the safety of the car. The five witnesses who were on the car also explained how the accident happened. Their explanation was that shortly after they left the place where they had been at work, the car which preceded them seemed to be gaining on them, and that one of the men on the car on which appellee was riding said "they are leaving us; let's pull up"; that they gave a quick jerk, increased the speed and gave another jerk; that the car raised an inch or two, slipped down and fell to the outside of the rail; that it was a very light car, and that the place where it left the rail was at the point of the curve; that it was caused to raise off the track by picking up the speed too fast; that by putting on too much power at one time it raised the front end of the car. One of the witnesses testified "they all said they are gaining on us; let's catch that car, so they began to jerk the car, and they jerked it off the track"; another that they did not increase the speed in the usual and ordinary way; that they gave a jerk all at once.

Appellee denied the statement of his five companions as to the cause of the injury, but the testimony upon that subject of the witnesses who were riding with him, together with the fact that the car was immediately placed upon the track and run to Evansville that night and back to work again the next morning, without repairs, caused the evidence upon this question to preponderate very decidedly in favor of appellant.

We conclude, from a careful examination of the record, that the great weight of the evidence showed that the car in question was one of standard make in general use by railroad companies, and in good repair on the morning appellee was injured; and that the injury to appellee was caused by the negligence of himself and his fellow-servants on the car, by jerking the car, and not because the car was out of repair and unsafe, as charged.

The judgment of the court below must, therefore, be reversed and the cause remanded.   St. Louis. National Stock Yards v. Godfrey, 101 Ill. App. 40.

*Reversed and remanded.*