### East St. Louis Railway Company v. O. C. Smith.

1. VERDICT—*when set aside as against the evidence.* Where the evidence is strongly against the appellee, the verdict should be set aside as against the weight of the evidence.

Action of trespass for wrongful ejection.  Appeal from the Circuit Court of St. Clair County; the Hon. R. D. W. HOLDER, Judge, presiding.  Heard in this court at the August term, 1905.  Reversed and remanded.  Opinion filed March 22, 1906.

SCHAEFER & FARMER, for appellant.

WEBB & WEBB, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.
Appellee claims that he was wrongfully ejected from one

of appellant's street cars in East St. Louis on March 1, 1905, and received serious injuries by reason thereof. He brought suit against appellant, recovered a verdict of $350, entered a *remittitur* of $100 and obtained judgment for $250.

The proofs in the record show that appellee, who had formerly been in the employ of appellant as a street car conductor, entered one of appellant's street cars at about 9:05 P. M. on the day above mentioned, accompanied by one Roy Saunders. At the time he entered the car appellee, who testified that he had taken four drinks of whiskey since five o'clock P. M., appears to have been somewhat under the influence of liquor. Saunders, his companion and witness, swore: "Smith took two whiskeys at the saloon and he took two before we started out;" also "when we first went into the saloon out there Smith told the man he was drunk as hell." When they got upon the car appellee stopped upon the platform saying to his companion, "You go inside the car and I will ride on the back end and we will have some fun on the way to town. I will jolly the conductor;" also "You go inside the car and I will stay out here and have some fun with him when he comes along and may be I won't have to pay any fare." When the conductor asked appellee for his fare, appellee said he didn't pay any fare on that line as he had formerly been a conductor. The conductor went into the car and collected the other fares and then went back to appellee and threatened to put him off for failure to pay his fare. Appellee told him to "come on and do it" and used other bantering language. The conductor then brought the car to a stop and called the motorman to his assistance, and thereupon appellee handed him a half dollar saying in answer to a question by the conductor as to where he was going that it was none of his "damned business." The conductor took out the fare and afterwards got off the car to flag it across a railroad crossing. The conductor then went upon the platform again and a controversy arose between him and appellee. As the car proceeded on its way Saunders heard

the conductor say, "You have got to stop that abusive language; there are ladies on the car."

The witnesses for appellant, most of whom were passengers and appear to be entirely disinterested, testified that appellee, when the conductor came back after flagging the crossing, used towards him the vilest, most abusive and indecent language in the hearing of all the passengers. The conductor then stopped the car, called the motorman to his assistance and they put appellee off the car. Appellee attempted to resist his ejection from the car by placing his hands upon the door facing, but they forcibly tore his hands loose.

Appellee said on direct examination he was thrown off on the ground, and on cross-examination that he was kicked off, also that when he got up he said to the conductor: "You have made a mistake in treating me this way; I paid my fare on this car and I have a right to ride on it, and I have an appointment down town with some friends and I want to go down on this car;" that he started to get on again, but the conductor kicked him to the ground and the car went off and left him. Saunders said he did not see appellee put off, but when he got up from the ground appellee said: "Let me back on, I paid my fare. I will sit down and behave myself. I wont say another word. I have an appointment up town at 9 o'clock;" that the conductor refused to let him on and moved his foot as if to kick, whether he did or not witness did not know. So far the evidence is that of appellee or his witness Saunders. The conductor testified that he did not kick appellee at all, that he pushed him off with his hands; that when he attempted to get on witness put his foot out, but did not put it in appellee's face; that he did not want to hurt appellee because he was drunk. Appellee is not corroborated in the statement that the conductor kicked him when he was attempting to get on, but a number testified that the conductor kicked at him at that time. Appellee had been a former employee of appellant, but had had trouble with the company on an occasion when he says

some people on his car claimed he had "short-changed" them, and he had either quit or been removed from appellant's service. He went upon the car the night in question under the influence of liquor, intending to make trouble. The evidence is overwhelming that he used the most indecent and disgusting language in the hearing of men and women upon the car, and he testified only in regard to the same, "I do not remember whether I used any profane language or not." Under the circumstances it was not only the right but became the duty of the conductor to remove him from the car for the protection of his other passengers. According to appellee's evidence the conductor used more force than was necessary in putting him off and kicked him after he was off. The weight of the evidence, however, is so strongly against appellee upon this question that the verdict should not be permitted to stand. "Although there may be evidence tending to prove all that is required to warrant a recovery, still where the verdict is so manifestly against the weight of the evidence as to make it apparent to the court that the verdict was not the result of the impartial and honest judgment of the jury, but that it must have resulted from mistake or from partiality, prejudice, passion, or some improper motive or condition, it is the duty of the court to set aside the verdict and award a new trial." St. Louis National Stock Yards v. Godfrey, 101 Ill. App. 40.

The judgment of the court below will be reversed and the cause remanded.

*Reversed and remanded.*