DETERMINED IN THE

# FOURTH DISTRICT

OF THE

# APPELLATE COURTS OF ILLINOIS

## DURING THE YEAR 1908.

## T. E. Tate, Appellee, v. Missouri Pacific Railway Company, Appellant.

1. PRACTICE—*when special findings not inconsistent with general verdict.* A judgment should not be rendered upon special findings as contrary to the general verdict unless, *considered as a whole,* they are inconsistent with the general verdict.

2. VERDICT—*when set aside as against the evidence.* A verdict will be set aside on review when it is apparent that the same was not the result of an impartial judgment of the jury, but that it must have resulted from mistake, misconception or confusion in regard to the evidence, or that the jurors were influenced by some condition not proper to be considered by them.

Assumpsit. Appeal from the Circuit Court of St. Clair county; the Hon. R. D. W. HOLDER, Judge, presiding. Heard in this court at the August term, 1907. Reversed and remanded. Opinion filed March 18, 1908. Rehearing denied September 9, 1908.

FORMAN & WHITNEL, for appellant.

KRAMER, KRAMER & CAMPBELL, for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

Appellee recovered a judgment against appellant in the Circuit Court of St. Clair county for damages alleged to have been occasioned by the delay in transit of six carloads of western horses, shipped by him over

appellant's road and destined for the National Stock Yards at East St. Louis, Illinois.

The declaration, which was in assumpsit, and contained two counts, alleged in the first count that appellee, on September 16, 1905, at Council Grove in the state of Kansas, delivered to appellant, a common carrier of live stock for hire, six carloads of horses to be safely carried from that place and be delivered to appellee at the National Stock Yards in St. Clair county, Illinois, in good order, within a reasonable time; but that appellant failed to safely carry and deliver said horses within a reasonable time as aforesaid, by reason whereof the same were lessened in value and certain of them either wholly lost or rendered worthless. The second count alleged there was no regular sale at said stock yards for western horses, but there were special sale days fixed upon, at which they were sold, of which the defendant had notice, and that defendant undertook to carry said horses and deliver them to plaintiff at said stock yards in good order in time for a special sale to be held on Tuesday, September 19, 1905; that appellant failed to deliver said horses to appellee in time for said sale, whereby appellee lost the opportunity of selling said horses on said day and was compelled to keep them for ten days to await another sale. Appellant filed the general issue and three special pleas. Plea No. 2, which was the first special plea, set up as a bar to recovery that the delay, damage and injury was wholly occasioned and caused by unprecedented rains and floods amounting to an act of God. Plea No. 3 set up certain provisions of the contract under which the stock was shipped, providing that said stock was not to be transported within any specified time nor delivered at destination at any particular hour, nor in season for any particular market, and that the shipper should assume the care of said stock in transit at his own expense and risk, and alleged that the damage, if any, to said stock was occasioned from causes not arising from the negli-

gence of appellant. Plea No. 4 set up a provision of said contract, requiring notice of the claim for damages to be given by the shipper in writing, within one day after delivery of the stock at destination and the failure on the part of appellee to comply with such requirement.

Appellee filed a replication to the second plea, denying that the delay and injury complained of was caused by unprecedented rains and floods amounting to an act of God. To the third plea he replied that the delay and injury was occasioned by negligence of defendant and that the terms of the said live stock contract were not assented to by him. To the fourth plea, he replied that the provision contained therein was unreasonable and therefore void; that the contract was not assented to by him and that defendant had waived the provision requiring service of notice.

The first trial resulted in a verdict in favor of appellant but a new trial was awarded and upon the second trial the jury returned a general verdict for $625 in favor of appellee. Upon this trial five special interrogatories were also submitted to and answered by the jury as follows:

"1st. Was the rain which fell from the 15th to the 20th of September, 1905, in the States of Kansas and Missouri along the defendant's line an extraordinary and unprecedented rain in that locality?
Answer. Yes.

2nd. Was the defendant's roadbed and tracks so damaged and impaired by the extraordinary rains and floods as to prevent its moving trains over same during the time intervening from the 16th to the 20th days of September, 1905?
Answer. Yes.

3rd. Did the defendant use diligence in repairing its tracks and roadbed and moving said stock forward after such repairs were made?
Answer. No.

4th. Did the plaintiff, T. E. Tate, enter into and assent to the contracts in evidence without the use of

fraud or artifice on the part of the defendant or its agents?

Answer. Yes.

5th. Did the plaintiff serve notice in writing on its, the defendant's, agent of claim for damages within twenty-four hours after the delivery of said stock at destination?

Answer. Yes."

It appeared from the proofs in the record that for some sixteen years appellee had been engaged in buying western range horses, and shipping them east to the National Stock Yards, to be sold at auction on certain sale days in each month which were devoted to the sale of such horses and were well known to buyers. On July 5, 1905, appellee shipped twenty-two carloads of horses from a point in Colorado to the National Stock Yards under an agreement giving him the privilege of unloading and pasturing as many of the carloads as he desired, during the summer at different points along the road in Kansas and then re-ship them to their destination, for which privilege he was to pay an additional sum of $17 for each carload so stopped and pastured. Under this arrangement he unloaded five of the cars at Council Grove, Kansas, and put the horses upon pasture for the remainder of the summer. On September 14, 1905, appellee shipped another carload of horses from Pueblo, Colorado, to the National Stock Yards which arrived at Council Grove on the following day and were there unloaded for rest, feed and water. On Saturday afternoon, September 16th, appellee brought in the five carloads of horses from the pasture, intending to load them and ship the six carloads that night so they would reach the National Stock Yards in time for the sale of western horses on the following Tuesday, September 19th. After he had paid his freight bill and signed and received his written contract and was ready to load his stock, he was told by the agent not to load the horses then, as the company could not handle them on account of washouts on its tracks between there and Kansas City.

About three o'clock the following morning, September 17th, the agent notified him to prepare to load his horses as they could go forward on a train which would leave about eight o'clock that morning. Appellee thereupon loaded his stock and it proceeded on its way to Kansas City where it arrived about 11:35 P. M. on the same day. From the 14th to the 20th of September, 1905, there were unprecedented rains and floods throughout Kansas and Missouri, the heaviest rains falling on September 16th. At five o'clock Sunday morning, September 17th, the iron bridge of appellant over the Lamine river, a stream about 200 feet wide at Otterville, Missouri, 110 miles east of Kansas City, was washed out together with 1,700 feet of track. When appellee's six cars of stock reached Kansas City they could not be sent forward to their destination on account of the washout at Otterville. The floods had damaged other roads leading east out of Kansas City, so that there was a congestion of stock and freight at that place. Appellee testified that he requested appellant, if it could not handle his stock to turn it over to some other road, which could take it to its destination; he was afterwards told by the live stock agent of the Burlington road that company could handle his stock and he so informed the general live stock agent of appellant, the latter answering that, ''he would see about it.'' Appellee left Kansas City about 5:30 P. M. on Monday, arriving at the National Stock Yards the next morning, at which time he told appellant's live stock agent at the stock yards of the condition of his stock and his intention to make a claim against the company for damages. Appellee's horses remained at Kansas City until Wednesday evening, September 20th, when they were forwarded over the Wabash railroad and arrived at the National Stock Yards the next morning, September 21st. During the delay a number of the animals died and others were so bruised and scarred they sold at a loss.

Upon the return of the general verdict and special

findings, appellant entered a motion for judgment in its favor on the special findings, which was denied by the court.

Appellant insists that the special findings 1, 2 and 4 are inconsistent with the general verdict and therefore under that section of the Practice Act which provides that, "When the special finding of fact is inconsistent with the general verdict the former shall control the latter and the court may render judgment accordingly." Hurd, 1905, chap. 110, sec. 58c. The court in this case should have rendered judgment in its favor.

By special findings 1 and 2 the jury found that the rains which fell from the 15th to the 20th of September, 1905, in the States of Kansas and Missouri were extraordinary and unprecedented and that thereby appellant's roadbed and tracks were so damaged and impaired as to prevent its moving trains over the same during the time intervening from the 16th to the 20th days of September, and by special finding No. 4 the jury said that appellee entered into and assented to the contracts in evidence without the use of fraud or artifice on the part of appellant or its agents. These findings tend to support the defense relied upon by appellant in his special pleas.

But the jury also specially found in answer to the third interrogatory, that defendant did not use diligence in repairing its tracks and roadbed and moving said stock forward after such repairs were made, and in answer to the fifth, found that plaintiff served notice in writing on appellant's agent of claim for damages within twenty-four hours after the delivery of ·said stock at its destination. The special findings as a whole therefore did not decide the ultimate facts presented for determination by the issues in the case so conclusively in favor of appellant as to have warranted the court below in entering a judgment thereon for appellant, and its motion for judgment upon the special findings was properly refused.

The question then recurs, was the general verdict

warranted under the case presented to the jury? We
are of opinion the proofs tended to show that the
delay in Kansas City was primarily caused by cir-
cumstances which amounted to what is known in law
as an act of God, and that appellant by the use of due
diligence was unable to repair its line to St. Louis in
time to forward the stock in question, prior to the time
it was actually shipped to its destination over the
Wabash railroad.

Appellee, however, insists that appellant is liable
because, as alleged, it received the stock after the dam-
age to the track which subsequently caused the delay
at Kansas City had occurred and also because it failed
to forward the stock from Kansas City over the Bur-
lington railroad to St. Louis at once on its arrival.
The former matter of contention does not appear to
us to have either been raised by the pleadings in the
case, or sustained by the proofs; and the evidence on
the part of appellee that the stock could have been
shipped over the Burlington, was very unsatisfactory,
while there was evidence on the part of appellant that
the stock went forward just as soon as that company
could get it transported.

A careful examination of the evidence in the case
leads us to the conclusion that the general verdict was
manifestly against the weight of the evidence; and
when that fact is considered in connection with the
special findings, it is apparent that the verdict was
not the result of the impartial judgment of the jury,
but that it must have resulted from mistake, miscon-
ception or confusion in regard to the evidence, or that
the jurors were influenced by some condition not
proper to be considered by them and therefore the
court below should have set aside the verdict and
awarded a new trial. St. L. Nat. Stock Yards v. God-
frey, 101 Ill. App. 40; Chicago City Railway Co. v.
Maloney, 99 Ill App. 623; Robinson v. Webb, 73 Ill.
App. 569.

The third section of the shipping contract entered

into by appellant and appellee at Council Grove, provided appellee should assume all risk and expense of feeding, watering, bedding and otherwise caring for the live stock, covered by the contract while in cars, yards, pens or elsewhere, and should load and unload the same at his own expense and risk.

In regard to this condition of the contract, the court instructed the jury "even if you do believe from the evidence that the terms and conditions of the live stock contracts in question, are binding upon the plaintiff in this case, yet he would not under said terms and conditions, be required to remain in Kansas City during all the time the horses in question remained there, and to feed and care for them during all that time."

Appellee contends all that could be required of him under this contract was to feed, water and care for the horses, provided they were not unreasonably delayed and made an ordinary trip; and asserts that they were taken into Kansas City by the gross negligence of appellant, and therefore appellee was relieved from obligation to feed and care for them. The question whether there was unreasonable delay under the circumstances or gross negligence on the part of appellant in taking the horses to Kansas City, and also whether appellee exercised reasonable care under the circumstances to care for his stock, were questions of fact to be determined by the jury, and not questions of law for the court and therefore this instruction was improper.

Appellee's second and fourth instructions referred to certain matters "as alleged in the first count of the declaration" which, strictly speaking, were not set out in said count and may have been to some extent misleading to the jury.

For the reasons above given the judgment of the court below will be reversed and the cause remanded.

*Reversed and remanded.*