### Jesse King, Appellee, v. The Consolidated Coal Company of St. Louis, Appellant.

VERDICT—*when set aside as against the evidence.* A verdict will be set aside on review as against the evidence where clearly and manifestly so.

Action in case for personal injuries. Appeal from the Circuit Court of St. Clair county; the Hon. R. D. W. HOLDER, Judge, presiding. Heard in this court at the February term, 1908. Reversed and remanded. Opinion filed September 12, 1908.

WISE & MCNULTY, for appellant.

D. J. SULLIVAN, for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

Appellee recovered a judgment against appellant of $2,750 for injuries to his arm, received on May 2, 1907, while employed in appellant's mine. There were only four witnesses in the case, including appellee, two on each side.

The facts which were not in dispute, were substantially as follows: Appellee, who was 24 years of age, had worked for appellant at the top of its mine trimming cars, for several years. Some thirty days prior

to the time he was injured, he was laid off or discharged. He had applied for further employment several times and on the day in question was re-employed and placed at work down in the mine. The manager of the mine, Mr. Hayes, met him at the bottom of the mine, pointed out the place he was to work and explained to him his duties, which consisted in pushing empty cars away from the cage. In the shaft were two cages, one on the east and one on the west, operated up and down by power at the surface, on each of which there was room for a coal car about four by six feet in dimensions. There were two tracks on each side leading from the mine to and on the cages, so that the cars could be pushed directly on them. The cage going up took the loaded car while the one coming back brought an empty one. As the cage stopped at the bottom, a loaded car was pushed on from one side which struck the empty car on the cage and pushed it off on the other side. It was the duty of the empty car pusher to take this car as it came off the cage and push it back· on the track some forty feet, where it was taken by the driver on into the mine to be reloaded. One track on each side was used to run the empty cars back on and the other to bring forward the loaded cars. The inside rails of the two tracks were from three and a half to four feet apart. The loaded cars were brought by the driver to within about forty feet of the cage, where a spragger took charge of them. From that point to the cage, there was a decline so that the cars would run by the force of gravity to the cage but not onto it. On each side there were two cagers, whose duty it was to push the loaded cars onto the cage on one track and two empty car pushers who pushed the empty cars out into the mine on the other track. The duties of the cagers and the empty car pushers were separate and distinct and the former received $2.56 a day each while the latter received $2.36 each. Appellee had working with him a foreigner, who did not understand English. The track at which appellee was set to work

was on the north side of the east cage. After he had been at work about an hour and a half, he stepped over from the track at which he was employed to the other track beside it, and while there his arm was in some manner caught and injured between a loaded car standing at the bottom of the shaft and another loaded car, which came down the incline and struck it.

The contested questions of fact were, (1) what was told appellee when he was employed by the manager, (2) his reason for being by the loaded cage, where he was injured, and (3) what was afterwards said by appellee as to the cause of his injury.

Appellee testified that the mine manager told him at the bottom of the shaft, before he went to work, that his duties were to pull the empties and to assist the cager when called upon; that immediately before he was injured a cager, Mr. Bunton, called him to help push a car on the cage; that in obedience to this request or order, he went behind the car to push and while there was struck by the other loaded car coming down the incline. His testimony upon this subject is not corroborated in any manner by other testimony, nor does it seem to be by other circumstances. One of the cagers, who worked on the same side of the shaft as appellee, testified that he was present at the time and heard the mine manager give his instructions and that he told appellee his job was to pull the empties; that the manager never told appellee he must obey witness or the cager who worked with him; that at the time appellee was injured witness and the cager working with him were standing on opposite sides of a loaded car when the cage stopped a second; that appellee stood on the side of the car with his arm on the end behind it; that appellee was not assisting the cagers in any way; that witness did not know what appellee was doing there and gave him no instructions to assist in pushing the car.

The mine manager, Mr. Hayes, testified that he told appellee to assist his buddy in handling the empties, to

get the empties off the cage; that he never said anything about loaded cars and never told appellee to obey the cager or do what he asked him to do; that the duties of the cager and the empty pusher were separate and distinct; that he should be careful in handling the empty cars that he did not get squeezed or his arm hurt; that after appellee was injured, on the same day, appellee told him that the cage had stopped and the cager stopped for a load and he, appellee, walked up to the loaded car and put his hand on the corner of the car and the spragger dropped two cars on him which caught his arm as he was standing behind; that the cager, Mr. Bunton, was standing there.

Appellee denied any conversation with the manager on the day of the injury but said he had only one conversation with him which was some five days later and that he did not in that conversation tell Mr. Hayes that he had placed his hand on the car and was standing on the side of it.

The only witness who testified for appellee, besides himself, was Mr. Schmidt, who was a cager on the opposite side of the shaft at the time appellee was injured. He testified only as to a description of the surroundings at the bottom of the shaft and the manner in which the work was carried on. He knew nothing concerning the directions given appellee at the time he was employed or as to the manner in which appellee was injured or how he happened to leave the track at which he was employed. He also testified that he heard Bunton tell appellee on the day before the trial that he did not remember whether he had ordered appellee behind that car or not.

It clearly appeared from the evidence that it was the duty of the two cagers alone to push the loaded cars on the cage and that the duties of those who took away the empty cars, were entirely different; that the two sets of men worked on different tracks and received different measures of compensation.

No good reason was shown why the cagers should

have needed any assistance from appellee and appellee's own witness, the cager on the opposite side, testified that the two cagers on appellee's side had done this work for two years prior to the injury. Appellee's case so far as the facts about which there is any controversy are concerned, depends solely upon his own testimony, while he is contradicted on nearly every material point by two witnesses. Moreover, the circumstances attending the employment of appellee and the extent of his injury, sustained appellant's position, while they are inconsistent with the testimony of appellee.

It is difficult to imagine how, if appellee was pushing the loaded car at the bottom of the shaft towards the cage, a loaded car of great weight could come up behind him and catch him only by one arm against the next car and not injure him elsewhere, while if he was standing as claimed by appellee with one hand or arm leaning on the back of the forward car, the extent of the injury is easily explained.

Upon the whole record we are of opinion that the verdict is so manifestly against the weight of the evidence that the jury must have been influenced by prejudice or by some motive or condition which could not properly have any weight in determining their verdict in this case or have wholly misconceived the effect of the evidence as applied to the issues in this case and it therefore should not be permitted to stand. St. L. National Stock Yards v. Godfrey, 101 Ill. App. 40.

The judgment of the court below will be reversed and the cause remanded.

*Reversed and remanded.*