DETERMINED IN THE

## FOURTH DISTRICT

OF THE

# APPELLATE COURT OF ILLINOIS,

## DURING THE YEAR 1905.

---

### New Virginia Coal Company v. Russell Gower.

1. MINE EXAMINATION—*when established.* Held, in this case, that the owner of the mine in question caused such an examination to be made of his mine, and in other respects so complied with the Miners Act, as to preclude the hypothesis of a wilful violation of the statute such as would authorize a recovery for personal injuries.

Action on the case for personal injuries. Appeal from the Circuit Court of Williamson County; the Hon. ENOCH E. NEWLIN, Judge, presiding. Heard in this court at the February term, 1904. Reversed. Opinion filed September 9, 1904. Rehearing denied March 1, 1905.

E. E. DENISON and W. H. WARDER, for appellant.

PILLOW & SMITH and A. J. KIMMEL, for appellee.

MR. JUSTICE HIGBEE delivered the opinion of the court.

This was an action on the case based upon section 18 of "An Act to revise the laws in relation to coal mines and subjects relating thereto, and providing for the health and safety of persons employed therein," approved April 18, A. D. 1899. Rev. Statutes, Chapter 93.

The declaration contains two counts which are substantially the same. It alleges that on June 6, 1902, the defendant, the New Virginia Coal Company, owned and

1                                    (1)

operated a coal mine in Williamson county, Illinois, and the plaintiff, Russell Gower, was working as a miner therein; that it was the duty of defendant to employ a competent mine examiner at all times, and cause him to visit the mine every day before the men were permitted to enter therein and make a careful examination and inspection of all places where men were expected to pass or work and inscribe on the walls of each room or working place, with chalk, the month and day of the month of his visit; that it was the duty of the examiner to place a conspicuous mark on all dangerous working places and to make a daily record of the condition of the mine as he found it in a book kept for that purpose for the information of all persons interested; that it was the duty of defendant to cause such examination and record to be made each morning before the miners were permitted to descend into the mine; that the defendant disregarding its duties, wilfully violated said section of the act above referred to and negligently, carelessly and wilfully neglected to cause a competent mine examiner to visit said mine and inspect the room in which plaintiff was working on the day in question and mark the same or record the condition of said room and wilfully and negligently permitted and directed plaintiff to enter said mine and room before any examination of the same was made and recorded as required by law; that by reason of said wilful and negligent failure of defendant to perform its said duties, the plaintiff, while in a room of said mine, engaged in mining coal, was struck and injured by a large mass of clod, rock or slate, which fell from the roof of said room, crushing his right hip and thigh bone, fracturing a rib and thereby permanently injuring him. The charges in short are, first, that defendant wilfully failed to cause a competent examiner to inspect the mine and the room where plaintiff worked and mark the same on the morning of the injury; second, that defendant wilfully failed to have a record made of the condition of the mine in a book kept for that purpose before the men were permitted to enter the mine to work; and, third, that de-

fendant wilfully permitted plaintiff to enter the mine to work before an examination had been made thereof and recorded as required by the statute.

There was a plea of the general issue and a jury trial, resulting in a verdict in favor of the plaintiff for $1,500. Motions for a new trial and in arrest of judgment were overruled and a judgment entered for the amount of the verdict, from which the defendant appeals.

The first and principal question presented for our consideration is whether the evidence in the case sustained the charge that defendant was guilty of a wilful failure of its duties in the three particulars named.

It appeared from the proofs that appellee began to work in appellant's mine on June 6, 1902; that he descended into the mine about 7:30 a. m. in company with his son, Joseph Gower, and was shown to his room by Oscar Cartlide, the mine manager, who went into the room and looked it over. At about 11:30 a. m. appellee fired a shot knocking down a small amount of coal. About three o'clock p. m., while appellee was at work making arrangements to fire another shot, a piece of slate about seven feet long, three feet wide and seven inches thick in the center, fell from the roof, striking him upon the hip, throwing him backwards and inflicting the injuries complained of. Appellee and his son, who were both working in the room, the mine manager, who went to the room with them and looked it over, and several miners who were in it during the day all failed to notice the piece of slate which caused the injury, prior to the time it fell. On the day the injury occurred appellant had in its employ Edgar E. Poole, a mine examiner of thirty-four years' experience and possessed of a certificate of competency from the state board of examiners, as required by law. He testified that he went down into the mine about six o'clock in the morning of said day and examined the rooms and entries, marking every place he went to; that he examined the room where appellee was afterwards injured and there were no dangerous places discoverable in the roof of the same at that

time; that he marked the room with the date of his examination; that after making his inspection of the mine he recorded his report in the book kept for that purpose in the engine room, located fifty to sixty feet from the place where the men were lowered into the mine, about seven o'clock a. m., before appellee or the other men went to work. The book containing the report of the inspection made by the examiner, with his signature thereto, was introduced in evidence. The engineer, Nickerson, who worked on the night shift at that time, testified that he lowered the examiner into the mine on the day in question between five and six o'clock in the morning and Engineer McGowen, who worked on the day shift and came on at seven o'clock a. m., testified to bringing the examiner out of the mine on the same morning.

The evidence in relation to the visit of the mine examiner to the mine on the day named, is uncontradicted and must be considered as showing conclusively that the examiner visited the mine and made his entry of the same in the record required to be kept for that purpose, prior to the time the miners went to work in the morning. Appellee, however, contends that, even if the examiner did go into the mine at the time he claims to have done so, he did not make the kind of an examination required by the statute. The section of the statute above referred to provides, among other things, that as evidence of his examination of all working places, the examiner shall inscribe on the walls of each with chalk, the month and the day of the month of his visit and appellee introduced evidence tending to show that such marks did not appear either in the room where appellee worked or in certain other rooms of the mine.

Appellant sought to overcome the force of this evidence by testimony tending to show that chalk marks on the roof or walls of a coal mine are easily washed out by dampness or drip water and that there was so much water and dampness in the part of the mine where appellee worked, the mine examiner's marks would often become invisible a few min-

utes after he made them. Even if this evidence be considered as proving that the examiner failed to mark with chalk the room where appellee worked and other working places in the manner provided by law, it would only show an imperfect performance of duty on his part.

In the case of Himrod Coal Co. v. Schroath, 91 Ill. App. 234, it is said: "In this state where the operator of a coal mine, before permitting any persons to enter the mine, causes it to be daily examined by a competent and duly authorized agent, who in good faith makes such examination, to ascertain if there are any dangerous conditions there which render it unsafe for men to begin work therein, and after such examination fails to find there are such dangerous conditions, and reports the mine to be in a safe condition, when in fact it is not, in that case, such operator ought not to be held liable to the widow of a person killed by such dangerous condition, in an action in her name, for the reason that said section 14 (now 33) only authorizes her to maintain such action where the act was wilfully violated or its provisions wilfully not complied with. . . . The statute does not give such widow a right of action against the operator for mere negligence, but only for wilful negligence."

In the case of Kellyville Coal Co. v. Hill, 87 Ill. App. 424, the court, in speaking of the statute relating to the examination of mines, says: "If the operator employs an examiner, holding a certificate authorizing him to act as such, and the examination is made at the time required, that, in our opinion, would constitute a compliance so far as the operator is concerned. At all events, a mere mistake of the examiner or a failure on his part to detect a defective place in the roof should not constitute a wilful neglect of the operators within the meaning of the statute."

We are of opinion that the evidence in this case shows appellant in good faith caused its mine to be examined by the examiner in its employ, who was shown, by his certificate from the state board of examiners, to be competent; that such examiner inspected the mine on the day in

question and made a record of the condition of the mine in a book kept for that purpose before appellee and the other miners entered the mine to work, and that there was no evidence tending to show that appellant was guilty of a wilful failure to comply with the statute in any of the three particulars named in the declaration and above referred to.

The judgment of the court below is accordingly reversed.

*Reversed.*