## Joseph Taylor Coal Company v. William Dawes.

1. VERDICT—*when not disturbed.* Where a verdict is not so manifestly against the weight of the evidence as to make it apparent to the court that it was not the result of the impartial and honest judgment of the jury, it will not be set aside on appeal.

2. ASSUMED RISK—*when doctrine of, has no application.* The doctrine of assumed risk has no application where a wilful violation by the master of a statutory obligation is charged.

3. NEGLIGENCE—*when proof of collateral acts of, competent.* Proof of other acts or instances of misconduct or default than that charged in the declaration is sometimes competent for the purpose of showing the intent, guilty knowledge or other state of mind, but not for the purpose of establishing the particular negligence charged in the case.

Action on the case for personal injuries. Appeal from the Circuit Court of St. Clair County; the Hon. R. D. W. HOLDER, Judge, presiding. Heard in this court at the February term, 1905. Affirmed. Opinion filed September 8, 1905.

LOUDEN & CROW, for appellant.

M. W. SCHAEFER, for appellee.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was an action in case by appellee against appellant in the Circuit Court of St. Clair County, to recover for a personal injury sustained by appellee while in the service of appellant, as a coal miner in appellant's mine. Trial by jury. Verdict and judgment in favor of appellee for $3,500.

The declaration, as disclosed by appellant's statement, is as follows: " The declaration consists of three counts. The first count charging the violation of the statute in lowering the cage at a greater rate of speed than six hundred feet per minute. The second count charges common law negligence in lowering the cage at such a careless, negligent and immoderate rate of speed that there was a slack rope, and by reason of the slack rope the safety catches with which the cage was then and there provided protruded and got into the slides in the shaft and one of the catches was broken, causing the cage to turn over and to be lodged in the shaft, crushing the plaintiff between the side of the shaft and the side of the cage breaking his leg and otherwise greatly injuring and bruising his hips. The third count charges that the engineer in charge of the engine lowered the said cage at such a wilful, reckless and wanton rate of speed that there was slack rope, and by reason of the slack rope the safety catches with which the said cage was then and there provided protruded and got into the slides in the shaft and one of the safety catches was broken, causing the cage to turn over in the shaft and become lodged therein, crushing the plaintiff, etc., laying the damages at five thousand dollars."

" The general issue was filed to the whole declaration, and upon the issues thus formed a trial was had before the jury."

The only errors noticed or pointed out in the appellant's

Joseph Taylor Coal Co. v. Dawes.

brief and argument are: "The verdict is against the law and the evidence;" the court admitted improper evidence on behalf of appellee and the court refused to give proper instructions asked on behalf of appellant. These embrace all the questions we may properly consider in this case. No authority need be cited in support of the rule that a "failure to point out supposed errors in appellant's brief is a waiver of all not so pointed out."

Under the assignment that the verdict is against the law and the evidence, counsel insist that there is no evidence tending to prove appellee's case as laid in any count of his declaration, and that therefore the court erred in refusing to direct a verdict in favor of appellant. From an inspection of the record we are of opinion this position is not well taken.

Under this assignment counsel further insist that if there be found some evidence in the record tending to prove appellee's case, the preponderance is not in his favor, that the verdict is against the weight of the evidence and that the court erred in refusing to set the verdict aside and grant a new trial, for that reason.

It is only where the verdict is so manifestly against the weight of the evidence as to make it apparent to the court that the verdict was not the result of the impartial and honest judgment of the jury, but that it must have resulted from mistake, partiality, prejudice, or some improper motive or condition, that a trial court is warranted in setting aside the verdict and awarding a new trial on the ground that the verdict is against the weight of the evidence. St. Louis National Stock Yards v. Godfrey, 101 Ill. App. 40. It does not appear to us that the state of the evidence here is such as to bring this case within the rule.

We deem it proper to note at this point, that no claim is made that appellee was not in the full exercise of due care and caution for his own safety, and that the record discloses no grounds for such claim.

We also note that neither the application of the fellow-servant rule nor of the doctrine of assumed risk is suggested

or discussed, and in our opinion the state of the record does not call for the application of either, here.   As to the first count of the declaration it is clear that the fellow-servant rule is not involved, because a wilful violation of the statute as in that count charged, within the meaning of the statute, is the act of the master and not that of a co-servant; and that the doctrine of assumed risk is not involved because the wrongful or negligent acts of the master are not among the risks assumed by the servant, except under a particular state of case which does not appear here.

That the wilful violation of the statute as charged in this case must be deemed the act of the master follows the well-established rule, that " the master cannot delegate to another the performance of a duty which the law imposes on the master."   If the master authorizes or knowingly permits another to perform such duty the one so acting is a vice-principal (vice-master), with respect to the performance of that duty and the power and duty to exercise the will of the principal (the master) with respect thereto, is for the time being vested in him; and the will he exercises or fails to exercise with respect to that duty is the will of the master, wherever the interests of third parties are involved.   For the purpose of analyzing this feature of this case, we may postulate the engineer to whom alone was intrusted the performance of the duty and in whom alone vested the power to regulate and control the speed of the cage, as the master,—as appellant.

This view is in full harmony with the general application of the vice-principal doctrine as applied in this class of cases.   Any other view would require that the master in his own individual person must be present at the time and participate in the act, or have knowledge that the statute is about to be violated and exercise his will in furtherance thereof.   Or in case the master be a corporation, as is the case here, then the incorporators, *en masse*, or at least some other representative of them or of the corporation than the one to whom the duty is specially intrusted and in whose hands alone is placed the power to perform or omit to

perform the imposed duty, must be present and participate in the act, or have knowledge and exercise a will in furtherance thereof. This would render most provisions of the statute utterly unavailing.

The statutory limit of speed at which cages may be lowered and raised is a comparatively slow and reasonably safe rate of speed. The prevailing practice on the part of hoisting engineers of greatly exceeding this rate and the danger to the miners incident thereto, prior to the passage of this act, and a purpose to lessen this danger, to minimize it, moved the legislature to pass the law. In the light of the history of cage disasters in the mines of this State can clearly be seen the necessity for, and the wisdom of this legislation, and it should receive at the hands of the courts such interpretation as will make it effective, if that can be, and be consistent with established rules of law.

Counsel for appellee cites Himrod Coal Co. v. Schroath, 91 Ill. App. 234, and Kellyville Coal Co. v. Hill, 87 Ill. App. 424, and we think misapprehends their meaning, much to his own disadvantage. Neither of these cases militate against the view of the law we herein hold, as above expressed. In the Himrod case the mine examiner, to whom had been intrusted the duty of examining the mine, did make and report the examination required by the statute. The most that can be claimed in that case is that the evidence tended to prove some negligence on his part in connection with the making of the examination. The mine was examined, and mere negligence in some details of the performance of that duty would not be " a wilful failure to have the mine examined," and that is all the court holds in that case and we think all it meant to say. If the examiner had consciously omitted to examine the mine at all, when he was free to do so, or had purposely made a mere pretense of doing so, and had not in good faith examined it, a very different case would have been presented. In the Kellyville case the undisputed evidence was that the mine examiner made a " thorough " examination of the mine. The court in that case holds no more than that a mere mis-

take on the part of a duly authorized examiner who did in fact actually examine the mine or mere negligence on his part, in some respect in connection with the performance of that duty, does not constitute a wilful failure to have the mine examined. The same rule is applied in both these cases, so far as the " wilful violation of the statute " feature is involved, as would be applied where the owner of a mine is himself a " duly authorized mine examiner," and examines his own mine. In such case no one would claim that mere mistake as to some of the conditions, or mere negligence in some detail of the examination, would constitute a wilful violation of the statute. To the same effect is New Virginia Coal Co. v. Gower, 119 Ill. App. 1. There the undisputed evidence proves that the examination required by law was actually made by a duly qualified examiner intrusted by the mine operator to the performance of that duty. If all that was claimed by appellee in that case be conceded, it only proves an imperfect performance of the duty, resulting from probable negligence. There was no evidence in that case of wilful failure on the part of the examiner to perform any of the duties imposed by law.

As to the second and third counts of the declaration, it is clear that appellee and the hoisting engineer were not fellow-servants *per se.* If the question be an open one at all, the most that can be claimed is that it was a question of fact for the jury. The case of Spring Valley Coal Co. v. Patting, 210 Ill. 342, is the last expression of our Supreme Court as to the fellow-servant rule in a case closely analogous to the case at bar. There the question of the relation of the appellee, a miner, to the hoisting engineer of the appellant, the mine operator, was directly in issue and under consideration. The court says : "The duties of the engineer were to operate, by means of the engines under his control, the moving of the cage up and down the shaft upon which the men were carried to and from their work in the mine, and to control the brake which regulated the speed of the cage as it ascended and descended in the

shaft, while the duty of appellee was to mine coal in the mine. The duties of the two men never brought them together in the discharge of their respective duties. Indeed, their duties were as disconnected as if they were employed by different masters and performed their labors in places having no connection whatever with each other. The respective duties of the appellee and the engineer did not bring them into association with each other, and did not in any manner require them to act or co-operate with each other. In view of their duties and relations to each other, within the rule announced in this State, the facts being undisputed, we think the court properly refused to submit to the jury the question whether or not the relation of fellow-servant existed between them." Here the court held as a matter of law, that the miner in the cage and the engineer at the " hoist " were not fellow-servants.

The question of assumed risk in the case at bar, is dependent upon the relation of the two servants to each other. As they were not *per se* fellow-servants, there was not *prima facie*, any assumption on the part of appellee of the risks incident to the wilful, wanton, or negligent acts of the engineer; and as these two questions are in no manner involved in any question raised upon the record, except in the ruling of the trial court refusing to direct a verdict in favor of appellant, we may here dismiss them from further consideration.

We are of opinion that the evidence and reasonable inferences deducible therefrom sufficiently prove that the cage was in fact lowered at a rate of speed in excess of 600 feet per minute on the occasion of appellee's injury, and that his injury was caused thereby. The declaration charges in the first count that this was in wilful violation of the statute, in the second count that it was negligently done, and in the third count that it was wantonly done.

The word "wilful," as used in the statute under consideration, means, the intentional doing of the prohibited act, or the conscious omission to do the prescribed act, there being present no impelling or restraining force or condition suf-

ficient to overpower the will of the party upon whom the duty is imposed. "Negligently done," for the purposes of this case, may be defined as being done without reasonable care as to consequences with respect to the safety of others, and "wantonly done," may be defined as being recklessly done, without any care as to consequences with respect to the safety of others.

If the cage by accident or otherwise, without fault or negligence, descended at a prohibited rate of speed or at an immoderate and dangerous rate of speed, there would be no liability. To sustain appellee's case it was necessary for him to establish the character of the act as either wilful, wanton or negligent. This involved, at least to some extent, the intent or motive under which the engineer acted and the state of mind accompanying his action with respect to the operation of the cage, for under the facts of this case these are imputable to appellant; and for the purpose of proving the requisite intent, motive, or state of mind, the same evidence was relevant and proper as would have been if the engineer had himself been the defendant, except admissions and statements made by him not part of the *res gestæ*.

While the character of the act may sometimes be inferred from the act itself, and may often be proved by the manner of its doing, or by the facts and circumstances under which it was done, it is not always so.

During the progress of the trial, after appellee had produced evidence of the excessive speed at which the cage was lowered, he placed other witnesses, nineteen in all, on the stand and proved by them, that on many previous occasions this same engineer had lowered this same cage with the men in it, at such rates of speed as to descend 200 feet in periods of time ranging from six to twelve seconds. This evidence was admitted over the objections of appellant, and they have assigned its admission as error. They invoke the general rule, that other acts or instances of misconduct or default cannot be admitted in evidence for the purpose of proving the acts, misconduct or default upon

Joseph Taylor Coal Co. v. Dawes.

which the suit is based. This is a rule of universal application as to proof of the mere act, but where it is necessary to prove purpose, intent, guilty knowledge or any other state of mind in order to give to the mere act, actionable character, then the rule is otherwise. In such case while the other acts cannot be admitted to prove the commission of the act upon which the suit is based, they are admissible. for the purpose of proving the state of mind necessary to give to the act upon which the suit is based, actionable character. This rule is now of as universal application as the other. It is laid down by all text writers and recognized by all courts.

We quote excerpts from Elliott on Evidence, Vol. 1, 162. " To prove purpose, intent, knowledge, or other mental state is a task of difficulty * * * but this is a mystery which modern jurisprudence by the use of reason undertakes to unravel. It demands, however, from the nature of the problem, a certain relaxation of the usual rules of evidence. Unless the person whose mental state is involved admits its existence (as alleged), the fact of such mental state can be established * * * by proof of * * * conduct * * * .. It naturally follows that such proof will frequently be found in the doing of an act at another time similar to the one as to which the issue is raised in the case on trial. That such proof would come within the scope of the rule against admitting *res inter alios actæ*, does not affect the validity of the reasoning under which it is received."

While there is no presumption that one did an unlawful or improper act, charged against him, yet when the doing of the act has been proved, then unless the circumstances of the particular case warrant some inference to the contrary, some presumption arises that the person acted intentionally or consciously; and this presumption is greatly strengthened by proof that such person at other times had done the same act under the same or similar circumstances. We are of opinion the trial court did not err in admitting the evidence complained of.

Counsel complain of the action of the court in refusing two instructions asked on behalf of appellant. One of these was an instruction directing the jury to disregard all the testimony as to the speed of lowering the cage at times previous to the injury of appellee. We have sufficiently discussed this feature of the case. The other directed the jury to disregard all allegations of negligence in the first count of the declaration. While the court refused to give this instruction, it gave the following: "The court instructs you, as matter of law, that before you find defendant guilty under the first count of the declaration, you must believe from the greater weight of the evidence, that the running of the cage in question was wilfully done and that the speed of the cage was the cause of the injury." This, we think, clearly presented to the jury their duty with respect to the only contested issue involved in that count, and was sufficient.

No complaint is made by counsel as to any instruction given on behalf of appellee.

The record is without substantial error. The case appears to us to be a meritorious one, and we think it ought to be affirmed.

The judgment of the Circuit Court is affirmed.

*Affirmed.*