The Illinois Central Railroad Company

*v.*

Rosario Panebiango.

*Opinion filed April 18, 1907.*

1. Railroads—*a company should give warning before moving living-cars of laborers.* A railroad company which provides living-cars. for the track laborers and places them upon a side-track for their use owes such laborers the duty of not suddenly moving the cars without notice or warning, where it knows, or is charged with notice, that the laborers are accustomed to crawl under the cars in going for water and to do their cooking, because the doors upon the opposite side of the cars have been fastened up by the company.

2. Same—*when crawling under car is not necessarily contributory negligence.* A track laborer living in a boarding-car supplied by a railroad company for use of its laborers, and placed, with other like cars, upon a side-track, coupled together and with the brakes set, is not necessarily guilty of contributory negligence in crawling under the car to go after water or attend his cooking instead of going around the cars, since, under the circumstances, he has reasonable ground for belief that the cars will not be moved without timely notice or warning.

3. Evidence—*when objection to testimony contained in deposition may be made on the trial.* If the objection to testimony contained in a deposition is based upon the form of the questions and answers, the objection must be made by a motion to suppress; but an objection to the competency of the testimony may be made upon the trial.

4. Same—*when admitting evidence as to custom of men crawling under cars is not reversible error.* Proof that the men composing the gang of track laborers of which the plaintiff was a member were accustomed to crawl under the living-cars in going for water and to attend their cooking, and that they had been told to do so by their native foreman, tends to show that the defendant's train employees who were stationed at the same place knew of such custom, and the admission of such evidence in an action against the company by the plaintiff, who was injured while so crawling under the cars, is not reversible error.

Appeal from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Kane county; the Hon. H. B. Willis, Judge, presiding.

D. B. Sherwood, (J. M. Dickinson, of counsel,) for appellant.

Gemmill & Foell, for appellee.

Mr. Justice Wilkin delivered the opinion of the court:

This is an action on the case begun in the circuit court of Kane county by appellee, against appellant, to recover for personal injuries. Upon a trial before the court and a jury judgment was rendered against appellant for $5000, which has been affirmed by the Appellate Court, and a further appeal is prosecuted to this court.

The declaration of four counts charged, in substance, the following facts: That plaintiff was in the employ of the defendant as a common laborer, working for it as a track repairer, and was at the time of his injury engaged as such in its yards near the town of Newbern, Tennessee; that the defendant had at that point two side-tracks and two main tracks running north and south, and had furnished for the use of the plaintiff and others working with him, certain box-cars in which to live, placed on one of said side-tracks, and it is alleged that it was the duty of the defendant then and there, while said cars were so located and the plaintiff living in the same, to use reasonable care to avoid running other cars or locomotives against the same, and to duly notify the plaintiff, by proper signals, of the approach upon said side-track of engines or other cars which might collide with or run against the one in which he was living, but that the defendant did not regard its duty in that behalf, but, on the contrary, while plaintiff was exercising due care for his own safety and was in and about the said living cars, through the carelessness and negligence of the defendant in not requiring warning to be given to the plaintiff of the approach of trains and locomotives, and in not causing such warning to be given, a certain freight train

attached to an engine was run in upon said side-track and violently collided with the car in which plaintiff was then living and around which he was working, causing the same to suddenly move and run over him, thereby causing the injury for which he sued. No objection is made as to the sufficiency of the declaration.

It is first insisted as ground of reversal that the trial court erred in refusing to allow the defendant's motion to take the case from the jury. The evidence introduced on behalf of the plaintiff showed that he, with a gang of some thirty-five Italian laborers, was employed by the defendant in the city of Chicago to do repair work on its tracks in different parts of the country, and was finally sent to Newbern, Tennessee, where the accident occurred. The gang had been at that place seventeen or eighteen days at that time. About seventy-five feet north of the station platform there were four tracks, the west one being a passing track, the next two main tracks on which the regular trains ran, and the east one a storage track, which was simply a side-track long enough to hold at least one hundred cars and connected with the east main track at either end. Midway on the storage track stood a group of cars variously called by the witnesses "living cars," "camp cars" and "shanty cars," which were occupied by the Italian laborers, including the plaintiff, in which to live. They were common box-cars, furnished by the company with stoves, dishes, bunks, and other conveniences for lodging and boarding the men. The men kept their clothes, trunks and other belongings in them. They furnished and cooked their own provisions, the defendant only furnishing the cars equipped with bunks, dishes and necessary cooking utensils. There were five cars in the group in which plaintiff and others lived and eight used by others of the gang engaged in the work. The thirteen cars were all coupled together and the brakes set so they could not readily be moved. The five cars were north of the eight, plaintiff occupying the fifth car from the

north end. The cars had doors on either side, but those on the east were fastened up by the defendant and the men used only those on the west side, from which steps or ladders were constructed, by means of which they got in and out of the cars. Not far from the north end of that track was a sub-way or culvert extending under the four tracks, and the testimony on behalf of the plaintiff is to the effect that a part of the five cars stood over the culvert, plaintiff's car being some twelve feet from it. The men did their general cooking in the cars and slept there but baked bread outside, a short distance east of the tracks, where they had made ovens by digging holes in the bank. There was a small stream of water east of the tracks running through the sub-way from which they obtained water, and the east car doors being fastened, they went out on the west side and passed under the cars to reach their ovens and get water. This fact was known to the foremen in charge of the gang and also to members of the crews in charge of gravel trains assisting in the work of ballasting the tracks. The gang of laborers had two foremen,—one an Italian, who hired the men and discharged them, and the other an American. There is evidence to the effect that the Italian foreman directed the men to go under the cars when necessary, but warned them to watch or be careful. Trains of loaded cars were set in at either end of the storage track for the work trains, which took them out and hauled them to the points where they were to be unloaded, and the work trains also set empty cars in, to be removed by the regular trains. Once about eight days after the men were located there, and again two days later, cars so set in on the storage track had run against the boarding cars, but with what force or effect does not appear. On February 13, which, as above stated, was seventeen or eighteen days after they began work, the plaintiff was sick and did not go to work on that morning. He was engaged in and about his car and about four o'clock in the afternoon he was about to bake bread.

He prepared the dough in his car, as usual, put it on a board, carried it out at the west door and started under the car to take it to the oven. A gravel train just at that time, without warning, backed in on the storage track at the north end and shoved cars against the boarding cars with such force and violence as to drive them about sixty feet along the track, notwithstanding they were all linked together and the brakes set. The stove in plaintiff's car was thrown down and the dishes and other contents therein displaced. As plaintiff was passing under the car the wheels ran over him, cutting off his left leg, crushing his right foot and breaking his left arm.

There is a conflict in the testimony as to some of the foregoing facts, but we do not think it can be seriously contended that the evidence does not fairly tend to establish them as stated. It is not denied by the defendant that the plaintiff was in its employ as a common laborer and that the cars above described were furnished him by the company on the side-track as a place in which to live, nor is it seriously contended that the train crews and the foremen of the gang under which the plaintiff worked were not aware of the fact that the men were accustomed to bake their bread in the ovens on the bank and get water east of the cars, and were in the habit of passing under the cars for that purpose. Does this evidence fairly tend to prove negligence on the part of the defendant? Manifestly, when the defendant provided the cars for the men to live in, it did not expect or intend that they should be liable to be shifted and moved about by the incoming train without notice to the occupants. To suppose otherwise would be unreasonable. Besides, the conduct of the defendant or its employees in setting the brakes and arranging the steps and doors indicates an intention that the cars were, for the time being, to be stationary living places for the men,—as much so as if they had been in shanties built along the side of, instead of on, the tracks.

Where a railroad company put an employee to work unloading a freight car standing on the spur of a side-track having connection with other tracks only at one end, and being a track not used for passing trains, there being nothing to lead the employee to believe the car he was unloading would be disturbed, and while so engaged the car was violently struck by other cars which became detached from an engine used in switching in the yard and the employee was thereby injured, we held that it was the duty of the railroad company not to have brought on the peril without timely notice to the employee; that either the cars should not have been brought into the position they were without notice, or it should have been first ascertained that no danger to the laborers could result therefrom, and that the failure to do so was gross negligence. (*North Chicago Rolling Mill Co.* v. *Johnson,* 114 Ill. 57. To the same effect are *Illinois Central Railroad Co.* v. *Hoffman,* 67 Ill. 287, *Noble* v. *Cunningham,* 74 id. 51, and *Chicago and Northwestern Railway Co.* v. *Goebel,* 119 id. 515.) So in this case, it was clearly an act of negligence for the gravel train to run against the living cars with such force as to suddenly move them, when it was known, or should have been known, that the workmen were liable to be in and about them, without giving them any warning or notice.

Witnesses for the defendant testified that the living cars were frequently run against by work trains, but the decision of the Appellate Court has settled that as one of the controverted facts in the case in favor of the plaintiff. Besides, it sufficiently appears that it was not the intention of the employees of the company to disturb those cars. One of the crew in charge of the train that caused the accident testifies that the collision was unintentional. That intelligent men in charge of trains, with full knowledge that the laborers were living in the cars and liable to be in and about them at all hours of the day, should willfully run against them and move them about without warning is most un-

reasonable. To do so would be an inexcusable disregard of human life.

But it is earnestly insisted that the plaintiff was himself guilty of such negligence contributing to his injury as ought to bar his right of recovery. However plausible this position may seem to be on first impression, we do not think it can be sustained. No one will claim that a person who voluntarily places himself in a known place of danger can recover from another for an injury unless the conduct of the other is willful, nor that persons operating a railroad are primarily required to use care to discover a party on a track where he has no legal right to be. Neither can it be contended that the railroad company is liable in this case if, as stated, it owed no duty, under the circumstances, to the plaintiff. And so the several propositions of law laid down by counsel for the appellant are not and need not be controverted. They are answered by the facts appearing in this record. Ordinarily it is clearly an act of negligence for a party to attempt to crawl under a railroad car standing on the track, liable at any moment to be moved; but where, as here, he has the right to suppose that the car is stationary and not expected to be moved without some warning, the act is not necessarily negligent. It was a question of convenience with plaintiff in reaching the east side of his car, whether he should pass under the car or go around it either to the right or left. To have gone south he would have had to go a distance of eight car-lengths and back, to reach the ovens; or if he went north, four car-lengths and back, crossing the culvert or sub-way. Even by so doing he would not have entirely escaped danger if the cars were subject to be suddenly moved, without notice to him; or if, as contended by defendant, the cars were not coupled together and he could have passed through between them, he would nevertheless have thereby exposed himself to danger. We think, however, the ground upon which he should not be held guilty of negligence as a matter of law, is the fact

that he had reasonable grounds to believe the car in which he lived would not be disturbed without timely warning to him. The facts and circumstances in evidence before the jury justified the finding that he was at the time in the exercise of ordinary care.

It is finally insisted that the trial court erred in its rulings upon the admissibility of testimony offered by plaintiff. The plaintiff was asked how often he had gone under that car before he was injured, to which the defendant objected on the ground that it was immaterial. In the deposition of one Campone the question was asked, "How did the men go down from the car to the oven?" The question was not objected to when the deposition was taken nor prior to the trial, but was then objected to as immaterial. It was insisted on behalf of the plaintiff that the objection came too late, and should have been by way of a motion to suppress. The same witness was asked, "Do you know whether these foremen,—this Italian and this American that you have spoken of,—knew that the men went in under the cars that way to the oven?" This was objected to on the ground that their knowledge would not bind the company. The objection was overruled, and he answered, "Yes, both of them knew it." In the deposition of Frank Datello he was asked, "And was Frank Simone around the cars there when the men went under the cars to go to the ovens?" And he answered: "He told us to go under the cars there and to go to the ovens; he told us only, he said, 'Watch·;' he says, 'If you see an engine or anything, then look out.'" This answer was also objected to as incompetent and irrelevant, on the ground that it was not shown that Simone had any authority to bind the company by his instructions concerning their action when not at work. In our view the evidence objected to was not incompetent, and therefore whether the objection should have been made to the questions in the depositions when they were taken or whether they could be made upon the trial is not of controlling im-

portance.   The rule is, that where the objection is to the deposition or questions and answers for want of form the objection must be by motion to suppress, so that the party taking the deposition may re-take the same and avoid the informality.   But where the objection is to questions and answers as incompetent the objection may be taken upon the trial.   Of course, the testimony objected to was not conclusive upon the defendant, but it called for facts and circumstances which tended to show what the custom of the men was in going to and from their ovens and the stream to obtain water, and that defendant's employees handling the gravel trains knew, or had opportunity· to know, that they did for that purpose pass under the cars.   The permission or directions of the foreman to pass under the cars would not justify the men in doing so if the act was otherwise one of negligence, but with that qualification we see no reason why he might not, within the scope of his agency, direct the men how to bake their bread and obtain water at their place of living.   Simone was of the same nationality as the laborers.   He employed them and had authority to discharge them.   He lived in the camp with them and had a general supervision over them.   We do not think the court committed reversible error in admitting the testimony objected to.

There appear to have been no objections to the rulings of the court in excluding testimony offered by the defendant.   The instructions of the trial court were very full and complete, submitting every question of fact to the jury under the most favorable construction of the law for defendant.

We find no reversible error in the record, and the judgment of the Appellate Court will accordingly be affirmed.

*Judgment affirmed.*

Mr. Justice Farmer took no part in the decision of this case.