## George Robertson, Appellee, v. Donk Bros. Coal & Coke Company, Appellant.

1. MINES AND MINERS ACT—*what "landing" within meaning of Act.* The bottom of the shaft where the cage stops to let men off who are being lowered into the mine for the purpose of going to their respective places of work is a "landing," within the meaning of the Mines and Miners Act.

2. MINES AND MINERS ACT—*who entitled to protection by provision requiring sufficient lighting of landings.* Paragraph B of section 28 of the Mines and Miners Act providing for the sufficient lighting of landings was designed not only to protect those coming to the bottom from their working places for the purpose of leaving the mine, but also those coming to the bottom for the purpose of going from there to their working places in the mine.

3. MINES AND MINERS ACT—*what evidence competent upon question of wilfulness.* The charge being that the landing was insufficiently lighted, evidence is competent upon the question of wilfulness to show conditions upon previous occasions with respect to the matter of lighting.

4. STATUTORY LAW—*general rule of construction.* In the inter-

pretation of a statute the purpose of the statute must be borne in mind. Where the language used will at all admit of it, it should be given meaning in harmony with the purpose.

Action in case for personal injuries. Appeal from the Circuit Court of Madison county; the Hon. R. D. W. HOLDER, Judge, presiding. Heard in this court at the February term, 1908. Affirmed. Opinion filed September 12, 1908.

WISE & McNULTY, for appellant.

C. H. BURTON, for appellee.

MR. JUSTICE CREIGHTON delivered the opinion of the court.

This was an action in case, in the Circuit Court of Madison county, by appellee against appellant, to recover for a personal injury sustained by appellee while in the service of appellant, as a miner in one of its coal mines. Trial by jury. Verdict and judgment in favor of appellee for $850.

The declaration is based upon paragraph (b) of section 28 of the Mines and Miners Act. The paragraph is as follows:

"Wherever the hoisting or lowering of men occurs before daylight or after dark, or when the landing at which men take or leave the cage is at all obscured by steam or otherwise, there must always be maintained at such landing, a light sufficient to show the landing and surrounding objects distinctly. Likewise, as long as there are men underground in any mine, the operator shall maintain a good and sufficient light at the bottom of the shaft thereof, so that persons coming to the bottom may clearly discern the cage and objects in the vicinity."

It is charged in the declaration that on the occasion of appellee's injury, appellant had wilfully violated this statute; and it is averred that appellee descended to the bottom of the shaft to go to his work; and that by reason of such violation he fell over a block of wood, at the bottom of the shaft, and broke his leg and injured his thigh.

Appellee was in the service of appellant as a coal miner, and the means provided for going to his place of work in the mine was to descend through the shaft, on a cage, to the bottom. The evidence tends to prove, and the jury was warranted in finding, that when the cage upon which appellee was being let down came to the bottom, the light was not burning, and that it had not been burning that morning, from the time the first cage load of men reached the bottom up to the time appellee was injured, and that when the cage carrying appellee came to the bottom it was so dark there that a person could not discern objects in that vicinity. One witness in describing it says: "The men leaving the cage at the bottom landing had to feel their way off and around with their feet as best they could." Another said: "I was only a few feet behind Robertson when he fell. He stumbled over the block right ahead of me and fell. After he fell he got up and got a light and saw what he fell over. It was dark where he fell; when he fell he didn't have a light on his pit lamp, nor I on mine." The jury was also warranted in finding that the object over which appellee fell was in the vicinity of the bottom of the shaft. The witnesses who estimate the distance, place it from eight to ten feet from the cage. One witness in describing the situation says: "There was a 'bumping block' at the bottom and in stepping off the cage, a man not seeing where he was going was liable to run into it any time." "This block was from a foot to eighteen inches" high. The fact that appellee was injured in the respects stated in his declaration is not in dispute. It also appears from the evidence that the condition as to light at the bottom of the shaft had been bad for some length of time; sometimes the lamp was not burning, and sometimes it was so smoky and dirty that it did not make sufficient light. Complaints had been made by the pit committee to the mine manager on two occasions, not long previous to appellee's injury.

Counsel for appellant contend that the trial court

should have directed a verdict in favor of appellant, because the place where appellee was hurt was "not 'a landing' within the meaning of the first part of paragraph 'b;'" and appellee "was not 'coming to the bottom' within the meaning of the second part of this paragraph." And counsel further contend that the facts of the injury do not bring the case within the statute, because the statute "was designed to prevent employes from falling into the sump or being injured by the cage."

We do not understand the statute to mean as counsel contend. We are of opinion that within the scope, purpose and fair meaning of the statute, the bottom of the shaft, where the cage stops to let men off who are being lowered into the mine for the purpose of going to their respective places of work, is "a landing." In section 16, e, the bottom of the shaft, with respect to the operation of the cage, is termed a "landing," and that paragraph requires that the mine manager shall know "that sufficient lights are maintained at the top and bottom landings, when men are being hoisted and lowered." In section 2, b, the bottom of the shaft is referred to as a "landing place." We think counsel's second and third positions, that the statute was intended to protect only persons coming to the bottom from their working places for the purpose of leaving the mine, and not to protect persons coming to the bottom for the purpose of going from there to their working places in the mine, and that the statute was designed only to prevent employes from falling into the sump or being injured by the cage, are too narrow.

In the interpretation of a statute the purpose of the statute must be borne in mind, and where the language used will at all admit of it, it should be given meaning in harmony with the purpose. The constitution of 1870 provides that "it shall be the duty of the general assembly to pass such laws as may be necessary for the protection of operative miners," and the title and

general structure of the Act discloses that the legislature was moved not only by the letter but by the spirit of the constitution as well. Persons coming to the bottom for the purpose of going to their various places of work in the mine are as much imperiled by darkness at that place as persons coming to the bottom for the purpose of leaving the mine, and we think are as much within the purpose and meaning of the Act. And to our minds there is nothing in either the language or purpose of the Act that warrants the conclusion that "the statute was designed only to prevent employes from falling into the sump or being injured by the cage." We think it was designed to protect them from the perils of darkness, while entering and leaving the mine, with respect to all "objects in the vicinity" of that particular place—the bottom of the shaft.

Counsel complains of the action of the trial court in the giving of each and all the instructions given at the instance of appellee, and the refusing of certain instructions asked by appellant. The action of the court, both in the giving and refusing of instructions is in entire harmony with our view of law as above expressed. The remaining questions pertain to the rulings of the trial court with respect to the admission and rejection of evidence.

During the progress of the trial the court permitted appellee to prove that on a number of previous occasions the lamp gave little or no light, sometimes because it was not burning and sometimes because it was so dirty that the light would not shine through; and that complaints had previously been made to the superintendent with respect thereto. Counsel insist this was error, and say: "We were trying the issue of the light on this morning."

It is true they were trying the issue as to whether there was proper and sufficient light there on the particular morning of the injury, but they were also trying the issue as to wilfulness. The evidence tended to prove and we think the jury was warranted in finding

396    APPELLATE COURTS OF ILLINOIS.

Robertson v. Donk Bros. Coal & Coke Co., 143 App. 391.

that the lamp was not making any light there on that particular morning, and it was material to appellee's right to recover that he prove such facts as would properly raise or strengthen the inference of wilfulness. For this purpose the evidence challenged was properly admitted. In Joseph Taylor Coal Co. v. Dawes, 122 Ill. App. 389 (396-397), we discussed this character of evidence quite fully. In that case, among other things we said: "Other acts or instances of misconduct or default cannot be admitted in evidence for the purpose of proving the acts, misconduct or default upon which the suit is based. This is a rule of universal application as to proof of the mere acts, but where it is necessary to prove purpose, intent, guilty knowledge or any other state of mind in order to give to the mere act actionable character, then the rule is otherwise. In such cases while other acts cannot be admitted to prove the commission of the act upon which the suit is based, they are admissible for the purpose of proving the state of mind necessary to give to the act upon which the suit is based, actionable character. * * * While there is no presumption that one did an unlawful or improper act, charged against him, yet when the doing of the act has been proved, then unless the circumstances of the particular case warrant some inference to the contrary, some presumption arises that the person acted intentionally or consciously; and this presumption is greatly strengthened by proof that such person at other times had done the same act under the same or similar circumstances." Our holding upon this question was affirmed by the Supreme Court in Taylor Coal Co. v. Dawes, 220 Ill. 145.

In describing the conditions at the bottom of the shaft at the time of the injury, a number of witnesses spoke of the presence of steam. Counsel insist this was error, and say: "There is no averment in the declaration that at this place there was any steam." It is true the action is not based upon the presence of

steam, and it is not mentioned in the declaration.  Its presence or absence was an incident, a circumstance; it was a part of the environment and might properly have been proved as such.  The entire environment in such cases is usually proper to be proved.  In this case, however, wholly independent of the general rules with respect to the propriety of admitting such evidence, a line of defense adopted by appellant was, that although there might not have been any light maintained at the bottom by appellant as required by the statute, still, if the light from the lamps of such of the miners as had lit their lamps and remained in the vicinity, "was sufficient to show the landing and surrounding objects distinctly," then appellee could not recover.  This feature of the defense went through the whole case, from the beginning to the end, and appellant obtained an instruction from the court submitting it to the jury.  This made the presence of steam, or any other agency, or condition, that might obscure such light as a miner's lamp or a number of such lamps, in the hands or on the caps of the men standing or walking around there would afford, directly material, without any reference to the declaration.

The judgment of the Circuit Court is affirmed.

*Affirmed.*