Elsie Russell, Appellant, v. Guy A. Richardson et al., Trading as Chicago Surface Lines, Appellees.

Gen. No. 40,787.

Opinion filed December 13, 1939.

EDWARD D. FEINBERG, of Chicago, for appellant.

FRANK L. KRIETE, JOHN W. COSTELLO and ARTHUR J. DONOVAN, all of Chicago, for appellees; JOHN R. GUILLIAMS, of Chicago, of counsel.

MR. JUSTICE BURKE delivered the opinion of the court.

Plaintiff filed an action to recover damages for injuries sustained by her through the alleged negligence of the defendants, doing business as Chicago Surface Lines. Following a trial before the court and a jury, a verdict was returned in favor of plaintiff in the sum of $7,500. At the close of plaintiff's case, and again at the close of all the evidence, defendants moved for a directed verdict, which motions were overruled. After the verdict, defendants filed written motions for a judgment notwithstanding the verdict, and in the alternative, for a new trial. The court allowed the motion for a judgment notwithstanding the verdict. It was, therefore, unnecessary for him to rule on the motion for a new trial. From the action of the court allowing the motion for judgment notwithstanding the verdict, this appeal is prosecuted.

The evidence shows that on February 25, 1935, plaintiff, a healthy unmarried woman, 35 years of age, became a passenger for hire upon a southbound State street car, operated by the defendants in the city of Chicago. She was on her way to the Post Graduate Hospital, located at 2400 South Dearborn street, Chicago. She took a seat in the body of the car, and when the car approached the intersection of 24th and State streets, she signaled to the motorman to inform him that she desired to leave the car. She did so by press-

ing a button located conveniently near her seat. She then left her seat and proceeded to the front platform, where she took a position in front of the exit door, which is on the right of the motorman. She testified that the street car then slowed down so as to move very slowly, that "it was moving about as fast as one would ordinarily walk." She stated that the motorman opened the door at which plaintiff was standing; that with her left hand she took hold of the iron rod located along the side of the door; that she proceeded to place one of her feet on the step of the street car; that the motorman at that time caused the car to suddenly and violently jerk forward; that plaintiff's hand was torn from the iron rod she was holding; that the car started suddenly just as she got to the step; that it all happened in the wink of an eye; that she was thrown before she hardly hit the first step; that she knew that the car was moving slowly when she stepped on to the step; that she was thrown into the street, causing her to fall on her shoulder; that she was the only passenger boarding or alighting from the street car at that intersection; that she immediately felt a sharp pain along the entire left side of her body; that then "everything went black." The motorman and conductor picked her up from the street and assisted her to the sidewalk located on the west side of State street. The conductor made a notation as to her name and address and gave her a card. She walked to the Post Graduate Hospital, about a block away. There she went to the bedroom of a friend of hers, who was employed as a laboratory technician. This friend gave plaintiff some aspirin tablets. Plaintiff then rested in her friend's room for about one hour and one-half. Plaintiff then proceeded by way of street cars to the Cook County Hospital, where she was examined by a senior interne. She complained of a pain in her back and that she had difficulty in walking. The doctor found a marked redness over the lumbar-sacral region

of plaintiff's back, and also found that the muscles of the back had become stiff and rigid. The doctor strapped her back, gave her anodynes to relieve her pain and advised her to go home and go to bed. It was this physician's opinion that the condition in which he found plaintiff was due to trauma. After being examined, she went to her home at 501 South Ashland avenue, Chicago. She remained in bed for about three days. While in bed, she felt a numbness develop on the left side of her body. She found that she could not use her left hand and foot in the same manner as she could prior to the accident, and she had difficulty in attempting to lift any object with her left hand. She then returned to her work at the University of Illinois, College of Dentistry, where she was a laboratory technician. In her work, it was necessary for her to use her hands. She found that she could not do her work because she could not employ her left hand. She also found that in standing, if she was not careful to place the weight of her body on her right foot, she would fall. A professor of histology at the University of Illinois, under whom the plaintiff worked, noticed that she was unable to do the work which she was able to do prior to February 25, 1935. He testified that after that date, plaintiff could not do her work as a technician in his laboratory because she was not able to use her left hand. Plaintiff consulted another physician. Before the trial, she was examined by Dr. Marguerite Kunde, who found that she was suffering from high blood pressure; that there was a decrease in the mobility of her left arm and leg and a marked impairment in the sensibilities in her left arm and left leg, and that a condition of atrophy had developed in the muscles of plaintiff's left arm and leg. Dr. Kunde was of the opinion that the condition would continue indefinitely and would become worse, and that such condition was due to trauma. Upon the trial, plaintiff was allowed to show the jury the extent to which she was

able to raise her left hand, which was only to the height of her chest. The court and jury also had an opportunity to observe the plaintiff in walking to and from the witness stand. She described the reason for her inability to use her left arm and leg as being due to a numbness. Dr. Eric Oldberg, an expert neurologist, testified that he made a complete neurological examination of the plaintiff two or three weeks before the trial. He examined her head and neck and all of the twelve cranial nerves and the trunk and extremities to determine the motor function of the trunk, legs and arms. He also examined all of the reflexes, of which there are three kinds, and of the sensations, of which there are several kinds. He found that the patient's reflexes were all within normal limitations, indicating that there was no organic lesion of the nervous system. He testified that there were no pathological reflexes, and that the reflexes in the left leg and left arm were equal with the right leg and right arm, indicating that there was no damage to the central nervous system. He observed the muscles of both legs and both arms and was of the opinion that they were normal in consistency. He found that there was no atrophy of the muscles. He also found that the muscular action was diminished on the left side and that she did not perform muscular action on the left side as well as on the right side. He stated that he could not see any reason why she should limp, or why she could not use her left arm, and attributed such condition to a state of mind on the part of plaintiff.

In addition to plaintiff, there were five occurrence witnesses, three of whom were passengers on the street car, and entire strangers to the parties. Gaylord Bunting testified that he was riding on the front platform behind the motorman, holding on to the rail which goes around the motorman; that the car stopped at 24th street; that after it stopped the motorman opened the door and plaintiff got off; that she walked three or

four feet from the car and she sat down on the ice; that it was very slippery; that the door of the street car was not opened before the car came to a stop; that the car was standing when the lady stepped off; that the car did not move while she was stepping off; that when she went down she was about three or four feet west of the exit door. Walter Carlson testified that he was riding on the front platform to the left of the motorman; that he did not notice anything out of the way in the operation of the car when it came to 24th street; that the car stopped at the usual place; that after it stopped, the motorman opened the door; that plaintiff got off; that he saw her stepping out of the car and that the next thing he knew she was sitting on the street about two and one-half feet from the door in a westerly direction; that from the time the street car stopped until he saw her on the pavement, the street car did not move. William Barnes testified that he was sitting on the west side of the street car close to the window, a couple of seats back from the door; that the car stopped at 24th street; that plaintiff got off; that after she got off, she slipped and fell when she was about three feet from the car; that he was looking at her when she was leaving the car; that she held on to the handle and got off; that when she let go of the handle, she slipped; that the street car was standing when she got off and that the car did not move when she got off.

Homer Matthews, the motorman, testified that he was a motorman for the Chicago Surface Lines, and that he had 17 years' experience as such; that he brought the car to a stop at the regular stopping place at the north crosswalk; that after the car came to a stop, he opened the door and plaintiff got out; that she took two or three steps from the car, and that when he looked again, she fell in a sitting position facing west, directly opposite the car door; that from the time he stopped the car until he saw her in the

street, there was no movement of the car; that it remained standing all the time, and that the door of the car was not opened at any time before it came to a complete stop.

Irwin E. Knapp testified that he was a conductor, and that he had been employed as such for 14 years; that the car stopped at the usual stopping place; that the car did not make more than one stop at 24th street that day; that the street car was standing six or seven seconds before he opened the doors; that he saw plaintiff sitting in the street about four feet from the car opposite the exit door.

The first point argued by plaintiff is that she proved a case which was properly submitted for the determination of the jury. She states that the testimony as to the sudden and violent jerking forward of the street car after the motorman had opened the door at which the plaintiff, with his knowledge, was standing for the purpose of alighting from the street car, and which directly resulted in the plaintiff being thrown from the street car, was sufficient evidence of negligence ·to be submitted to the jury. We agree that the testimony of plaintiff, taken as true, was sufficient for the submission of the case to the jury on the matter of defendants' negligence and of whether such negligence was the proximate cause of the injuries she suffered. Plaintiff also maintains that she was in the exercise of due care and caution before and at the time of the occurrence, and that, therefore, she was not guilty of contributory negligence. The burden was on plaintiff to prove, by a preponderance of the evidence, that defendants were guilty of the negligence charged, and that she was in the exercise of due care and caution for her own safety at and about the time of the occurrence. The trial court entered judgment against the plaintiff on the ground that she, as a matter of law, did not prove that she was in the exercise of due care and caution.

In passing upon a motion for a judgment notwithstanding the verdict, made by defendants, the court should not determine whether the verdict is against the manifest weight of the evidence. Defendant maintains that there is no competent evidence to support the allegations of the complaint that plaintiff was in the exercise of due care and caution for her own safety. The rule is that negligence and contributory negligence are questions of fact for the jury. If the matter is open to a difference of opinion, the jury must pass upon it. It becomes a question of law only when the evidence is so clearly insufficient to establish due care that all reasonable minds would reach the conclusion that there was contributory negligence. The motion for a judgment notwithstanding the verdict, presented to the trial court a question of law whether from the evidence in favor of the plaintiff, standing alone, and when considered to be true, together with the inferences which may legitimately be drawn therefrom, the jury might reasonably have found for the plaintiff. The trial court decided, as a matter of law, that the evidence in favor of plaintiff, considered to be true, together with the inferences which might legitimately be drawn therefrom, did not prove that she was in the exercise of due care and caution. For that reason, he entered judgment against her.

At the time of the occurrence, there were in force two sections of the Uniform Traffic Code of Chicago, of which the trial court took judicial notice, and which read as follows:

"Sec. 81. It shall be unlawful for any person to board or alight from a street car or vehicle while said street car or vehicle is in motion.

"Sec. 82. It shall be unlawful for any person to ride upon the fender, running board or outside step of a moving vehicle. This provision shall not apply to any employee engaged in the necessary discharge of his duties." Defendants say that section 81 of the Uni-

form Traffic Code is a general safety ordinance, which applies to everyone; that it is not confined to street cars; that it concerns the conduct of citizens in boarding or alighting from any vehicle, including a street car; that it is a recognition by the legislative authority of the city that boarding or alighting from a street car while it is in motion, is dangerous. It is undisputed that an ordinance passed in pursuance of a power conferred by the legislature, has the force and effect of a statute. Defendants also state that the violation of the ordinance is at least prima facie evidence of negligence, and that when plaintiff testified that she was injured while in the voluntary performance of an act which is held by the courts to be prima facie evidence of negligence, there is no legal basis for a finding that she has proved that she was in the exercise of due care in the absence of additional evidence to overcome such prima facie evidence, and that where there is no such additional evidence, the court has no alternative than to hold that the plaintiff has failed, as a matter of law, to prove due care. Without the ordinance, the rule is that it is not negligence *per se* for a person to get on or off of a slowly moving car, whether propelled by horse power, cable or electricity, and that the question of contributory negligence in such case is one of fact for the jury. (*Kelly v. Chicago City Ry. Co.*, 283 Ill. 640; *Springfield Consol. Ry. Co. v. Hoeffner*, 175 Ill. 634; *Chicago Union Traction Co. v. Lundahl*, 215 Ill. 289.) The question that faces us is whether the existence of the ordinance changes the rule. The trial judge undoubtedly reasoned that the plaintiff violated the ordinance and that such violation established, as a matter of law, that she did not exercise due care. The ruling, in our opinion, is contrary to the doctrine laid down by our Supreme Court in *Lerette v. Director General of Railroads*, 306 Ill. 348. In that case the evidence showed that Lerette attempted to climb over the bumper of two cars after a string of cars which were

blocking his way failed to move for a period of about twenty minutes. Just as he was getting onto the bumper, the string of cars, without warning, was suddenly jerked and he fell backwards and the wheel of one of the cars ran over his right leg. The jury returned a verdict for the plaintiff in the sum of $18,000. On appeal, the defendant contended that plaintiff, in attempting to climb over the bumper between the cars, violated a section of an act pertaining to the operation of railroads, and that, therefore, he was guilty of contributory negligence, which contributory negligence was the proximate cause of the injury. The court said: "The mere fact that plaintiff was violating the law at the time he was injured will not bar his right to recover unless the unlawful act in some way proximately contributed to the accident in which he was injured. (*Star Brewery Co. v. Hauck,* 222 Ill. 348; *Graham v. Hagmann,* 270 id. 252; *Ensley Mercantile Co. v. Otwell,* 142 Ala. 575, 4 Ann. Cas. 512; *Munroe v. Hartford Street Railway Co.,* 76 Conn. 201, 56 Atl. 498.) In determining whether the unlawful conduct of plaintiff will bar his right to recover there must be kept in mind the distinction between that which directly and proximately produces or helps to produce the result as an efficient cause and that which is a necessary condition or attendant circumstance of it. If the illegal act is a mere condition which made it possible for the accident to occur but is in itself no part of the accident it will not bar recovery. It is, of course, an essential condition of most accidents that the injured party be where he was at the time he was in order for the injury to occur, and the fact that he would not have been there if he had not been violating the law is not, in itself, a defense. (*Newcomb v. Boston Protective Department,* 146 Mass. 596, 16 N. E. 555; *Berry v. Sugar Notch Borough,* 191 Pa. St. 345, 43 Atl. 240; *Tackett v. Taylor County,* 123 Ia. 149, 98 N. W. 730.) Granting, but not deciding, that appel-

lee's act in climbing through the string of cars, under the circumstances, was an illegal act, it is still a question of fact whether this illegal act was the proximate cause of the injury. (*Lake Erie and Western Railroad Co. v. Mackey,* 53 Ohio St. 370, 41 N. E. 980; *Illinois Central Railroad Co. v. Panebiango,* 227 Ill. 170; *Rosenthal v. Chicago and Alton Railroad Co.,* 255 id. 552.) It is clear that appellee would not have been injured as he was injured if the cars had not been moved at the time and in the manner they were moved. It is therefore a controverted question of fact whether the act of appellee in climbing through the cars was the proximate cause of the injury received, and that question has been settled in appellee's favor by the judgment of the Appellate Court.'' The rule has been followed in *Jeneary v. Chicago & Interurban Traction Co.,* 306 Ill. 392; *Blumb v. Getz,* 366 Ill. 273; and *Gourley v. Chicago & Eastern I. R. Co.,* 295 Ill. App. 160. We are of the opinion that the trial court erred in deciding, as a matter of law, that plaintiff had not established that she was in the exercise of due care for her own safety. Furthermore, we are of the opinion that the cited ordinance is not applicable to the factual situation presented.

Defendants argue that plaintiff was alighting from the car when, according to her testimony, the speed of the car was accelerated. She testified that as the car slowed down, the motorman opened the door and that while the car was still moving slowly, she advanced one foot toward the step. The ordinance must be given a reasonable construction. We believe that what it intends to prohibit is, ''any person to board or alight from a street car'' while said car or vehicle is in motion. We do not believe that the testimony of plaintiff shows that she was alighting from the street car while it was in motion. It shows that she was preparing to alight. Apparently, from the actions of the conductor in opening the door before the car stopped,

he recognized that she was preparing to alight. We are of the opinion that the ordinance is not applicable to the facts of the case.

Defendants state that should we be of the opinion that the court erred in entering a judgment notwithstanding the verdict, that we then consider whether there was any error in the case which would entitle them to a new trial. They make such suggestion under the provisions of section 68 (3)c of the Civil Practice Act [Ill. Rev. Stat. 1939, ch. 110, § 192; Jones Ill. Stats. Ann. 104.068]. We will now consider whether errors were committed which entitle defendants to a new trial. In that section of their brief, defendants say that the verdict is against the manifest weight of the evidence. There is a sharp conflict in the testimony. Her testimony is contradicted by the occurrence witnesses. Defendants cite the cases of *Peaslee v. Glass,* 61 Ill. 94; *Smith v. Slocum,* 62 Ill. 354; *Reinowski v. Richardson* (Abst.), 279 Ill. App. 633; *Dick v. Swenson,* 137 Ill. App. 68, and other cases in support of their argument that we should allow a new trial. In the *Smith* case, at page 360, the Supreme Court said:

"As a general rule, it is the province of the jury to judge the credibility of the witnesses and to say what weight shall be given to the evidence; but then they must do so intelligently and not arbitrarily. . . . So we say in this case that it was an unwarranted assumption of power in the jury to reject the evidence of so great a number of disinterested and unimpeached witnesses and found their verdict alone on that of an interested witness, and herself a party to the record. This would be a perversion of the plainest principles of justice." In the *Peaslee* case, at page 95, the Supreme Court said: "Without saying that this court would set aside a verdict for the plaintiff, rendered in such cases, on the ground alone that it was not sustained by the evidence, we must set aside one resting

only upon the evidence of the plaintiff when that is contradicted not only by the defendant but also by another witness, and there are no elements of probability to turn the scale. Such is the present case.''

Plaintiff, in opposing the motion for a new trial, cites several cases, among them being the case of *People v. Hanisch,* 361 Ill. 465, where the court said, page 468:

''Whatever may be the rule in certain other jurisdictions, we firmly adhere to our often-asserted belief that it is the province of the jury, alone, to determine the weight of the evidence and the credibility of witnesses. If it were not so there would be little use for the jury system. The jury, as a fact-finding body, is of such importance that an abridgment of its functions in this regard and an appropriation of them by the judges would mean the forsaking of a valued tradition in our system of jurisprudence. The utmost caution should be exercised not only by the trial courts but by the reviewing courts to uphold the sanctity of the trial by jury.'' and *Joseph Taylor Coal Co. v. Dawes,* 122 Ill. App. 389, where the court, at page 391, said:

''It is only where the verdict is so manifestly against the weight of the evidence as to make it apparent to the court that the verdict was not the result of the impartial and honest judgment of the jury, but that it must have resulted from mistake, partiality, prejudice, or some improper motive or condition, that a trial court is warranted in setting aside the verdict and awarding a new trial on the ground that the verdict is against the weight of the evidence.'' The rules announced in the cited cases are applicable to the facts in those cases. After a careful perusal of the record in the instant case, we conclude that we would not be justified in finding that the verdict is contrary to the manifest weight of the evidence.

Defendants criticize the action of the court in giving and refusing various instructions. The court gave

20 instructions on behalf of defendants. These instructions, in our opinion, clearly presented defendants' position to the jury. Some of the instructions that were given by the court, when considered apart from the other instructions, might tend to confuse or mislead the jury. However, when the instructions are considered as a whole, we arrive at the conclusion that the jury was fairly instructed as to the law of the case. In determining whether the court erred in giving and refusing instructions, it is well to bear in mind the view expressed in the case of *Reivitz v. Chicago Rapid Transit Co.*, 327 Ill. 207, at page 213:

"The test, then, is not what meaning the ingenuity of counsel can at leisure attribute to the instructions, but how and in what sense, under the evidence before them and the circumstances of the trial, ordinary men acting as jurors will understand the instructions. (*Chicago Union Traction Co. v. Lowenrosen*, 222 Ill. 506; *Funk v. Babbitt*, 156 id. 408.)" We have also considered the objections by defendants to the rulings of the trial court on the admission of evidence, and are of the opinion that on the whole, such rulings were proper.

Finally, defendants urge that the damages awarded of $7,500, are excessive. Plaintiff testified that she walked from the place where she was picked up, to the Post Graduate Hospital, and from there to the street car. She then proceeded to the County Hospital and from there to her home. There were no bone fractures, sprains or dislocations. A careful consideration of the testimony concerning the injuries which plaintiff claims, convinces us that the verdict is excessive, and we are of the opinion that the damages should not exceed $4,000. The judgment entered notwithstanding the verdict is reversed, and judgment is entered here for plaintiff and against defendants in the sum of $4,000 if the plaintiff shall within 10 days file in this court a remittitur in the sum of $3,500; otherwise, the judgment is reversed and the cause re-

manded to the superior court of Cook county for a new trial.

*Judgment reversed and judgment here for $4,000 upon remittitur; otherwise judgment reversed and cause remanded.*

DENIS E. SULLIVAN, P. J., and HEBEL, J., concur.